## GERAK v. THE STATE OF OHIO.

*Criminal law—Jurisdiction of felony by minor—Murder in per-petration of robbery—Grand jury may indict and common pleas try infant—Juvenile court without jurisdiction, when —Section 1639 et seq., General Code.*

1. By the statutes of Ohio a young man 17 years of age, who, while in the act of committing burglary, intentionally kills another, under circumstances making him guilty of a fel-ony, may be indicted by the grand jury for that offense, ánd the only court that is clothed with jurisdiction to try him for such felony is the common pleas court.

2. The fact that, under the Juvenile Court Act (Section 1639 *et seq.*, General Code), the commission of a felony by a minor constitutes him a delinquent and authorizes such court to take charge of him as such delinquent, does not relieve him of the consequences of his crime, or abridge the right of the grand jury to indict him for such crime, or the right of the common pleas court to try him for such crime, where the juvenile court does not acquire jurisdiction of him for such delinquency before the com-mon pleas court acquires jurisdiction of him for such felony.

(Decided February 13, 1920.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. Henry Du Laurence,* for plaintiff in error.
*Mr. David Rothkopf,* assistant prosecuting attor-ney, for defendant in error.

WASHBURN, J. The record in this case discloses that Thomas Gerak, a young man just under 18 years of age, was indicted, tried, and found guilty of the crime of murder in the first degree; that

there was a recommendation of mercy and he was sentenced to the penitentiary for life.

The jurisdiction of the common pleas court to thus try and sentence Gerak was challenged by a plea in abatement, which was overruled. In this proceeding in error, we are asked to reverse the judgment of the trial court on the ground that it was without jurisdiction of the defendant or the subject-matter of the action.

The claim is that the juvenile court is given exclusive jurisdiction over a delinquent minor under 18 years of age; that, if it appears that such minor is over 16 years of age and has committed a felony, that court is authorized to bind such minor over to the common pleas court for indictment and trial, the same as "any other person charged with a felony;" and that unless the juvenile court binds such minor over to the common pleas court the latter is without jurisdiction to indict or try such minor for any offense.

The statutes conferring jurisdiction on the common pleas court have always included the right to try "whoever" commits a felony, which, of course, includes minors. That court has long exercised such jurisdiction, such statutes have not been specifically amended in this particular, and there can be no question that the common pleas court still has jurisdiction to try minors, as well as adults, who commit felonies, unless the provisions of the Juvenile Court Act limit such jurisdiction. As has been said, that act does not expressly limit such jurisdiction of the common pleas court; neither does it confer such jurisdiction upon any other court.

The Juvenile Court Act provides that the juve-

nile court shall have "jurisdiction of all misdemeanors against minors" (Section 1683-1, General Code), but does not attempt to confer jurisdiction of felonies committed by minors.

The only reference to felonies in the act is in Section 1681, General Code, which provides that, if a minor is charged with a felony, he may be recognized by said juvenile court to appear before the common pleas court for "indictment, trial, judgment and sentence," the same as "any other person charged with felony."

Our attention is called to the fact that in Section 1652, General Code, it is provided that if a child is adjudged to be a delinquent the judge of the juvenile court may commit such child, if over 16 years of age, to the Ohio State Reformatory. But that is plainly not a commitment as a punishment for crime; the whole proceeding is correctional and not criminal. No punishment is provided and none is intended. The act does not provide for the indictment of the child, or for the child's trial by jury, or for any of the constitutional rights of accused in criminal proceedings. It is neither a criminal prosecution nor a proceeding according to the course of the common law, and for that reason it is not a proceeding in which the right to a trial by jury is guaranteed by the Constitution. *Leonard, Supt.,* v. *Licker,* 3 Ohio App., 377, 23 C. C. (N. S.), 442, 26 C. D., 427; *Ex parte Januszewski* (C. C.), 196 F., 123.

The object of the law is to place the child under guardianship of public authorities for proper care and discipline until he has reformed or arrives at the age of majority, and he can in no event be

placed in an institution used exclusively for the punishment of criminals. *Prescott* v. *State,* 19 Ohio St., 184, 2 Am. Rep., 388.

It is true that by the act a child who commits a felony is declared to be a delinquent, but such delinquency is not a felony or crime. And, as has been said, provision is made for reformation, but no punishment is provided, and the fact that he is declared to be a delinquent is not tantamount to declaring that he is not a criminal.

By the Act of April 16, 1857 (54 O. L., 163; S. & C., 687), as later amended, if an accusation of crime was made against an infant under 16 years of age before the grand jury, such grand jury, instead of returning an indictment, could recommend to the court that the accused be committed to the guardianship of the directors of the House of Refuge or the State Reform Farm, and the court was thereupon authorized to so commit the accused without a trial by jury. That law remained in force for several years after the enactment of the Juvenile Court Act, and until the adoption of the General Code, and, being omitted from the General Code, it was repealed by implication, but there still remains in force a similar law which was passed in 1878, and which was carried into the General Code as Section 2086, and which provides that a male youth over 10 and under 18 years of age when charged with a crime before the grand jury, "if the charge is supported by sufficient evidence to put him on trial, may be committed by the court to the Boys' Industrial School on the recommendation of the grand jury, without presenting an indictment."

It is also provided that, where a youth not over

18 nor under 10 years of age is indicted, tried, and convicted of a crime or offense, the punishment of which, in whole or in part, is confinement in a jail or penitentiary (and he can only be convicted of a penitentiary offense by trial in the common pleas court), the court at its discretion may commit such youth to the Boys' Industrial School. Section 2085, General Code.

Even if sentenced to the penitentiary, the board of trustees of such school may, without the consent of the court, cause such youth to be transferred from the penitentiary to such school, to be thereafter governed by the rules and regulations of such school and subject to parole (Sections 2095 and 2091, General Code), or he may be transferred from that institution to the Ohio State Reformatory (Section 2096, General Code).

It thus appears that the right of the common pleas court to indict in the first instance and try and pass judgment upon a minor under 18 years of age is recognized, and the minor so tried becomes a ward of the state and subject to reformatory discipline much the same as if he had been taken to the juvenile court in the first instance.

As we view it, the Juvenile Court Act does not in any way change the common-law rule which has always governed in Ohio as to the capacity of a minor to commit a crime; indeed, criminal responsibility of minors for felonies committed by them is specifically recognized by the provision authorizing the juvenile court to bind them over to the common pleas court for indictment and trial "the same as any other person charged with a felony," and it is significant that this provision

includes minors of any age who may be brought before the juvenile court.

It is also provided in the Juvenile Court Act (Section 1659, General Code) that "when a minor under the age of eighteen years is arrested, such child, instead of being taken before a justice of the peace or police judge, shall be taken directly before such juvenile judge; or, if the child is taken before a justice of the peace or a judge of the police court, it shall be the duty of such justice of the peace or such judge of the police court to transfer the case" to the juvenile court, where proceedings shall be had the same as if the child had been brought before the juvenile court in the first instance, but there is no reference to an arrest made upon an indictment returned by the grand jury. The duty of an officer who makes an arrest upon an indictment is fixed by other statutes which have not been expressly repealed or amended, and we cannot bring ourselves, in view of the statutes referred to and the long-established policy of the state, to the conclusion that such statutes were impliedly limited or changed by the Juvenile Court Act.

By the statutes of Ohio a young man 17 years of age, who, while in the act of committing burglary, intentionally kills another, is guilty of a felony. The laws provide that the grand jury may indict him for that offense and the only court that is clothed with jurisdiction to try him is the common pleas court.

The Legislature has not specifically enacted that the grand jury cannot act or the common pleas court exercise such jurisdiction unless and

until the juvenile court has bound him over to
the common pleas court. Under the law as it was
before the Juvenile Court Act was passed, the
police court and the justice of the peace court
had jurisdiction to inquire into felonies committed
by minors, and bind them over to the grand
jury, but the Juvenile Court Act specifically takes
such jurisdiction from said courts and transfers
it to the juvenile court, which court *may* bind
over to the grand jury; but the right of the grand
jury to inquire into crimes committed is not
limited to cases where the accused has been bound
over to such grand jury.

The fact that under the Juvenile Court Act the
commission of a felony by a minor constitutes him
a delinquent and authorizes such court to take
charge of him, as such delinquent, does not re-
lieve him of the consequences of his crime or
abridge the right of the grand jury to indict him
for such crime, or the right of the common pleas
court to try him for such act, unless the juvenile
court acquires jurisdiction of him for such de-
linquency before the common pleas court acquires
jurisdiction of him for such crime.

As we view it, there is nothing in the statute
which requires the common pleas court to re-
linquish such jurisdiction after the minor has
been indicted and is in the custody of such court.

If the juvenile court first acquires jurisdiction
of him, and he has become a ward of such court,
it may be that he cannot be indicted and tried in
the common pleas court unless the juvenile court
relinquishes its jurisdiction and binds him over to
the common pleas court, but that is not the situa-

tion in this case. The juvenile court made no attempt to exercise jurisdiction over Gerak; he was not brought before and was in no manner in the care or custody of that court.

It is said that "the sound discretion of the juvenile judge is a prerequisite to the vesting of jurisdiction in the common pleas court" to try a minor under 18 years of age for a felony, and that this "is in tune and step with every inspiring thought and noble impulse concerning the care, safety and well-being of children under 18 years of age."

We are not unmindful of the trend of our civilization or of the great good that may be accomplished by the proper and wise administration of the juvenile court, but we are unwilling, by implication only, to impute to the Legislature an intention to make the jurisdiction of the common pleas court to indict a minor depend upon the action of the juvenile court, even though we thought such legislation wise.

It is a matter of common knowledge that in cities there is an alarming increase in the number of serious felonies committed by young men under 18 years of age, notwithstanding the fact that this juvenile court law has been in operation for 16 years, and attention to the effect of the operation of the parole and other reform laws does not lead to the conclusion that they should be extended, or that a youth like Gerak, who has already reached the position of a postgraduate in criminal knowledge and practice, should be sent to the juvenile court.

As administered in Ohio the parole law practi-

cally gives to each one the right to commit at least one crime without being punished therefor, and thoughtful and discerning men may well declare that consideration for the victims of crime and protection to society should not be entirely obscured by the sentiment for and attempts to reform those who commit the crimes.

It is also claimed that the evidence in the case did not warrant the jury in finding Gerak guilty beyond a reasonable doubt.

There could be no shadow of a doubt of his guilt if Gerak was one of the two men who came into Thompson's restaurant at the time the crime was committed. He testified that at the time the crime was committed he was not in Cleveland, but was in Youngstown committing a highway robbery, and he produced several witnesses to substantiate such claim. He also acknowledged the commission by him of other crimes. The state's witnesses, who positively identified Gerak as the man who fired the shot, were standing in a well-lighted room very close to him, and, just before the shot was fired, he had stood directly in front of the witnesses and very close to them, and had looked into their faces and they had looked into his. The circumstances of their identification of Gerak were detailed to the jury, and the jury believed the state's witnesses rather than the witnesses for Gerak. We cannot be expected to comment in this opinion upon all the evidence. Our consideration of it leads us to the conclusion that in view of the character of the witnesses and the stories told by them we cannot say the jury were not fully justified in finding that Gerak was the man who

fired the shot and was guilty beyond a reasonable doubt.

It is also claimed that the trial court erred in the admission of evidence, in that it permitted the state in cross-examination of some of Gerak's witnesses to ask them if they and Gerak had not committed other crimes. These questions, in the opinion of a majority of the court, were improper, but the answer was a denial, and improper questions had previously been asked by Gerak's counsel on cross-examination of the state's witness Brogan. This, however, is no excuse for the error in permitting the prosecuting attorney to transgress the limits of proper cross-examination with the view of indirectly proving Gerak guilty of other offenses, and of attacking his character before he had offered himself as a witness, and the question is, Was such error prejudicial?

We are prohibited by law from reversing for error unless we find such error to be prejudicial. In this instance the questions failed to elicit the evidence sought, and, moreover, Gerak did afterwards offer himself as a witness and attempted by his own testimony to prove himself guilty of highway robbery, and when all his testimony is considered it is apparent that he did succeed in establishing for himself a very bad character and a criminal career which the public is entitled to be protected against.

Under such circumstances, and in view of our finding on the weight of the evidence, we cannot say that such error was prejudicial.

It is also claimed that errors of a like nature occurred in the cross-examination of Gerak, but

we do not find that there was an abuse of the sound discretion which is vested in the trial court in determining the limit of cross-examination of a defendant on trial; in any event such action was not prejudicial in view of the explicit and proper charge of the court as to the purpose of and weight to be given to the evidence elicited by the questions objected to.

It is next claimed that the trial court erred in not granting a new trial on the ground of newly discovered evidence. This matter was brought to the attention of the trial court by affidavits attached to the motion for new trial, which motion and affidavits appear in the bill of exceptions. The affidavits charge that the attention of the court and the prosecuting attorney was called during the trial to the fact claimed in the affidavits that an important witness for the state had made statements before the trial contrary to his evidence given at the trial, but the bill does not show that no counter affidavits or evidence were offered or considered on the motion for a new trial.

The certificate in the bill of exceptions at the close of the evidence taken at the trial refers only to such evidence, including the exhibits specifically referred to therein, as was offered at the trial, and in no way refers to the subsequent proceedings which thereafter appear in the bill and which include the hearing and action of the court on the motion for new trial.

Under such circumstances, where it appears that the attention of the trial court was called to the matter during the trial, and then by affidavits on motion for a new trial, a reviewing court will

presume that the court did its duty and had before it sufficient evidence to warrant its action, and the party complaining must affirmatively show by the record that such was not the case. In this instance such presumption is aided by consideration of the contents of the affidavits. The trial judge had personal knowledge as to that part of the affidavits referring to him, and the ruling he made indicates that he must have had satisfactory proof in reference to the matter, and in the absence of a showing to the contrary we should and do presume that he had good and sufficient reasons for not granting a new trial on that ground.

It is also claimed that there was misconduct on the part of the prosecuting attorney in his argument to the jury, and that this is shown by affidavits attached to the bill of exceptions, the same as the affidavits above referred to.

If a party desires to prosecute error for misconduct of an attorney in his argument to the jury, the record should show that he objected at the time of the argument and the court failed to do its duty in the premises, and that the objecting party excepted thereto.

If the affidavit which was filed brought into the record in this case the objectionable argument of the prosecuting attorney and the fact that objection was made thereto, it, nevertheless, is silent as to the action of the court in reference to the matter, and does not show that any exception was taken by the complaining party.

But it is clear that the proper method of bringing into the record the claimed misconduct of counsel was not pursued. Such matters cannot be

introduced by affidavit. *State* v. *Young,* 77 Ohio St., 529, 83 N. E., 898; *State* v. *Parmenter,* 84 Ohio St., 482, 95 N. E., 1155.

We have considered all of the claimed errors which have been called to our attention in brief or argument, and finding no prejudicial error the judgment is affirmed.

*Judgment affirmed.*

DUNLAP, P. J., and VICKERY, J., concur.