## In re Edwards

*John M. Bennett*, assistant district attorney, for petitioner.

McKENDRICK, J., October 29, 1945.—On the night of September 5, 1945, the dead body of Phyllis Jean Epperson, aged three, was found on the river bank at South Fork, Cambria County, Pennsylvania. Death resulted from injuries to the head, which appeared to have been crushed in several places by stones. Lloyd James Edwards was taken into custody by the police and he admitted that he had struck the deceased several times with large stones. Lloyd James Edwards accompanied the State and county police to the scene of the killing and reënacted the events in which he admittedly had participated. A charge of murder was made against Lloyd James Edwards and he was committed to the Cambria County jail to await action by the proper authorities.

Lloyd James Edwards was born May 16, 1936, and therefore is past nine years old. After conferences between the representatives of the district attorney's office, the State police, and members of the court, it was decided that the charge of murder against the minor delinquent should be withdrawn and the case referred to the juvenile court for hearing and determination.

The Juvenile Court Law gives jurisdiction to the juvenile court in all proceedings affecting delinquent, neglected and dependent children under the age of 18 years except where the offense charged is murder. Where one is charged with murder it is necessary that an indictment be found by the grand jury, and the cause is then triable in the court of oyer & terminer by a jury. Where, however, a defendant pleads guilty to murder generally, the court itself has power to fix the degree of the crime and the punishment therefor. In this particular proceeding we are confronted with a most extraordinary and unusual circumstance. At common law a child under the age of seven years is conclusively presumed to be incapable of committing a crime. Between the ages of seven and fourteen, the law deems a child incapable, but only prima facie so, and evidence may be received to show a criminal capacity. Over the age of fourteen, a child, like all other persons, is considered prima facie capable of committing crime; and the one who alleges his incapacity to commit crime must prove it.

Lloyd James Edwards, who is of the age of nine, comes within the class of children who are prima facie incapable of committing crime; but if the evidence shows the capacity of the mind to distinguish between right and wrong and to appreciate and understand the quality of the act, one may be held culpable and subjected to the punishment which the law prescribes for murder.

The problem facing the court and the district attorney was whether with the knowledge of the facts as they were developed by the minor's admissions, and by subsequent investigations, a prosecution for murder should be instituted and prosecuted to its completion, or whether the case should be disposed of in the juvenile court.

The juvenile court has power to commit offenders to institutions for training and reformation, or it may

place an offender upon probation until he reaches the age of 21 years and thus is in a position to supervise the minor and those persons in whose custody he may be.

Some practical difficulties presented themselves, and after mature and deliberate consideration it was decided to institute proceedings in the juvenile court. The district attorney, with the approval of the court, has discretion in the conduct of his office, and under all the circumstances acted wisely in referring the matter to the juvenile court.

All homicide, or the killing of a human being, is not necessarily murder within the technical meaning of that term. We take it, that the murder referred to in the Juvenile Court Law as being a crime excepted from the jurisdiction of the juvenile court, is a formal murder charge based upon indictment and not upon the mere fact that the arresting officers made an information before a magistrate charging the crime of murder. There being no formal murder charge by indictment, which would be necessary for the purpose of trial in the court of oyer & terminer, the district attorney was within his rights in appealing to the juvenile court to determine the offense and the proper punishment. We therefore conclude that the juvenile court has jurisdiction to try the minor as a delinquent child.

The Juvenile Court Law of June 2, 1933, P. L. 1433, defines a delinquent child as "a child who has violated any law of the Commonwealth or ordinance of any city, borough or township". The alleged minor in this proceeding has, of course, violated the law of the Commonwealth, and is therefore subject to the jurisdiction of the juvenile court. A petition, therefore, was filed in the juvenile court on September 24th by Sergeant V. F. Bunch of the Pennsylvania State police. After the filing of the petition the probation office attached to the juvenile court made a most thorough and exhaustive examination and investigation of the matters

deemed pertinent to the proper determination of the case. We had trained psychiatrists and psychologists examine Lloyd James Edwards and submit their findings and recommendations to the court. The preliminary investigations made by the State police and county officers, together with the reports of the examining physicians, were studied previous to the hearing of the minor involved.

On October 19, 1945, the case was heard in the juvenile court. At the hearing, John M. Bennett, Esq., assistant district attorney of Cambria County, and Sergeant V. F. Bunch of the State police, together with the chief probation officer, Mrs. Lola Bennett, appeared. Mrs. Emma Sikorski, mother of Lloyd James Edwards, was also present at the hearing, which was stenographically reported by Francis J. Leahey, official court stenographer. Lloyd James Edwards testified at the hearing and revealed in minute detail the occurrences which resulted in the death of the Epperson child. The story, as revealed in juvenile court, was substantially that previously related by him to the police and the assistant district attorney. The fact that Phyllis Jean Epperson came to her death at the hands of Lloyd James Edwards has been established beyond all doubt. The minor delinquent, in our opinion, is able to distinguish between right and wrong. He is apparently a boy of average intelligence, with nothing unusual about his appearance except that he is undersized and not well developed for a boy of his age. He has had a fairly good school record, but is repeating the third grade. There are, however, some unusual aspects in the case. The minor delinquent seems to be without the emotions which one would expect to find in a normal child. He does not talk freely and is inclined to hesitate to give details which are within his knowledge. It has been our experience in handling a large number of juvenile cases that children talk freely, and where they are willing to admit the doing of the thing for which

they are brought into court, they do not hesitate, but seem anxious to make a clean breast of the whole thing, and seem to feel better when it is over. The minor in this case was rather reluctant to tell all that he knew, and, therefore, never volunteered to disclose anything unless he was asked about it specifically. We are satisfied that the home conditions and environment in which this boy was compelled to live were not conducive to his best moral interests, and we have also learned of some occurrences in his lifetime which would ndicate a sadistic or cruel attitude. We think also that his curiosity is of a morbid type and that probably was the thing that caused him to strike the Epperson girl with a stone, fearing that she would report his actions to her mother. After the child was felled by the first stone, it is hard to understand why he continued to inflict further injuries which eventually caused her death. We believe that the normal reaction of a boy of the age of nine in circumstances such as we have related would have caused him to run home as fast as his legs could carry him. This boy, we are informed, leisurely pursued a roundabout course to his home, displayed no emotion, said nothing to any member of his family, and went quietly to bed, and was sound asleep when the officers found him. At the county jail, where the boy was confined, he seemed to be perfectly contented and happy and apparently showed no desire to return home where he might be free to play with his companions. All of these unusual reactions, and our own observation during the hearing, convince us that this child is not entirely normal, although there are no highly marked signs of abnormality. Dr. Katherine Wiseman of the Torrance State Hospital, Dr. Margaret Mercer, phychologist of that institution, Dr. H. J. Bennett and Dr. William H. Livingston of Ebensburg, are of the opinion that Lloyd James Edwards should be sent to some institution where he can be observed before final disposition is made of the case. We intend to follow their recommendation.

It is a matter of regret and embarrassment to the court that it was necessary to confine a nine-year-old boy in the county jail pending investigation and hearing. This case emphasizes the urgent need for a juvenile detention home in Cambria County. The children's home maintained by the county is not a home for delinquent children, and it would be illegal to send delinquent children to that institution. It was evident to us from the beginning that the child should not be permitted to return to the environment from which he came pending hearing. It would have been wholly impracticable to have placed the child in a detention home maintained by some other county. Under the circumstances there was nothing to do other than detain the child in the county jail, where of necessity he had to mingle with adults confined in that institution. A detention home, such as has been discussed from time immemorial, is designed for the temporary custody of children who are charged with offenses against the law and his confinement in such place would have been proper. However, we were faced with a situation which we could not control, and against our better judgment we committed the child to the county jail for safe keeping. Ordinarily, the disposition of charges against juveniles is not made public. The Juvenile Court Law provides that the records of the proceedings in juvenile court shall be kept from the indiscriminate inspection of those who may have a malicious interest in the matters brought before the juvenile court. This provision in the law is intended to protect the child's future, and ordinarily we would not make these proceedings public. In this case, however, the public has more than a passing interest, for out of the killing of the Epperson child may have arisen a charge of murder which would have been publicly tried. The people of Cambria County are entitled, we believe, to know what has been the disposition of any case which is charged with a public interest and the right of the public to

examine the facts of this particular case rises above the right of the minor to have the information suppressed.

We have therefore made an appropriate order committing Lloyd James Edwards to the Allentown State Hospital for study and observation in the Children's Department of that institution. The final disposition of the matter depends largely upon the recommendations of experts who are in a position to know what is best for Lloyd James Edwards and for the public generally.