Mont Appeal.

Argued April 17, 1953; reargued October 7, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

*William J. Woolston,* for appellant.

*Samuel Dash,* Assistant District Attorney and *Frank P. Lawley, Jr.,* Deputy Attorney General, with them *Michael von Moschzisker,* First Assistant District Attorney, *Richardson Dilworth,* District Attorney, *Harry F. Stambaugh,* Special Counsel and *Harrington Adams,* Deputy Attorney General, for appellee.

OPINION BY RHODES, P. J., March 16, 1954:

On this appeal, Arnold Mont, an alleged delinquent, questions the validity and legality of a finding of de-

linquency and of the commitment to a reform school made by the Municipal Court of Philadelphia, Juvenile Division, under The Juvenile Court Law of June 2, 1933, P. L. 1433, as amended, 11 PS §243 et seq. Some of the questions involved are identical with those raised in *Holmes Appeal,* 175 Pa. Superior Ct. 137, 103 A. 2d 454. The two appeals, although not otherwise related, were argued together.

Briefly, the evidence in this case discloses that Mont, aged 15 and a companion, obtained a 22 caliber rifle, and Mont, while shooting at objects in the street from a roof top, shot and killed Robert Morgan, Jr., aged 11, who happened suddenly to emerge from around the corner of a building into the path of the rifle fire.

On September 23, 1952, a petition was filed in the Municipal Court of Philadelphia, Juvenile Division, alleging the delinquency of Mont based on charges of homicide and burglary. On the same day, after hearing, Mont was held by Judge PROPPER, sitting as a committing magistrate, without bail for the grand jury on a charge of murder. Thereafter, the grand jury returned true bills on indictments for murder and manslaughter. Subsequently, on January 28, 1953, the Commonwealth had entered a nolle prosequi on the murder bill. The charges of manslaughter remained pending in the Court of Quarter Sessions of Philadelphia County, which then transferred the proceedings to the Juvenile Court.

A hearing was held before Judge PROPPER in the Juvenile Court on February 16, 1953, at which time counsel appeared for Mont. At this hearing Detective McGurk gave testimony as to the police investigation of the shooting, and read in evidence the apparently voluntary statement of Mont to the effect that Mont hit Robert Morgan, who came into view from around the corner of a house, while Mont was aiming at a tin

can in the street from a position on a roof top. A representative from the Board of Education testified Mont was absent from school 87 days out of a school year. A probation officer of the Juvenile Court testified to Mont's oral statement that Mont had "pulled the trigger" and shot the deceased boy. Over counsel's claim of privilege against self-incrimination on behalf of Mont, appellant was examined and corroborated his former statements as to the manner of obtaining the rifle and the circumstances surrounding the killing of Robert Morgan. Mont's mother and father were called and examined by the court and counsel for Mont. Mont's attorney also placed upon the record of this hearing the fact that he had attempted to secure a court order for prehearing inspection of the entire record of the Mont proceeding in the Juvenile Court, including the reports of investigators. The court permitted inspection of the record but excluded therefrom what it considered confidential reports of its investigators. On the basis of the testimony the court formally adjudged Arnold Mont a delinquent, and, giving consideration to his past record, ordered him committed to Glen Mills School For Boys. According to the court records, as set forth in the court's opinion, Mont was arrested July 10, 1951, for delinquency based on larceny of a bicycle, aggravated assault and battery, highway robbery, and malicious mischief. Apparently no formal hearing was had, nor was any finding made on these alleged delinquencies. Further, the court in its opinion states: "On June 22, 1952 Arnold Mont was placed on probation for delinquency involving an arson charge. On September fifth, 1952 the juvenile court judge who heard the instant case placed Arnold Mont on probation because of delinquencies involving an incorrigibility charge made by his mother and a disorderly conduct charge."

On appeal Mont's attorney contends that the jurisdiction of the juvenile court is limited to unlawful acts other than murder and hence the court lacked jurisdiction or power to find the child delinquent and commit him on what was in substance a murder charge. Clearly, under general principles and under the express provisions of the Law, the juvenile court has no authority or jurisdiction to conduct a criminal trial of a child on a murder indictment. The Law makes certain exceptions in the case of murder. Cf. *In re Edwards,* 54 Pa. D. & C. 601. Section 14, as amended, 11 PS §256, requires the court of quarter sessions or oyer and terminer in all pending criminal charges involving children under 16 to transfer such cases other than murder to the juvenile court. So, also, in section 18, 11 PS §260, where a child above 14 is held for any offense other than murder, punishable by imprisonment in a state penitentiary, the judge of the juvenile court having jurisdiction may, if the interests of the state require it, certify the case to the district attorney for formal criminal prosecution. Neither of these sections says or implies that the act of unlawful homicide may not constitute, under proper circumstances, the basis for the jurisdiction of the juvenile court, and the ground for adjudication and commitment of the minor as a delinquent. In the present case it was entirely proper and lawful for a nol. pros. to be entered on the murder charge and to remit the case to the juvenile court for action. While under the Law the juvenile court has no jurisdiction over a charge for murder where a true bill has been found and is pending, it must of necessity, considering the fundamental purposes of The Juvenile Court Law, have jurisdiction to base a determination of delinquency upon acts which would otherwise constitute murder or unlawful homicide under the criminal law. Any other interpretation

of the Law would mean that a child whose unlawful acts in substance amounted to unlawful homicide, the most serious violation of law known, would be exempted from the beneficent provisions of the Law. The framers of the Law intended no such anomaly. There is as much, if not more, reason for applying the Law to such a child as to one whose delinquency arises from less serious violations.

Here disposition was made of the formal indictment for murder before the case was referred to the Juvenile Court. It would appear to be equally permissible that a juvenile court exercise jurisdiction in a case of unlawful homicide where no murder or formal criminal prosecution has been instituted. Cf. *In re Edwards,* supra, 54 Pa. D. & C. 601; *In re Clifford,* 55 Pa. D. & C. 238. Judge PROPPER having originally held the child for the grand jury upon a formal charge of murder, and a nol. pros. having been entered on the murder indictment, there was no such conclusive disposition of the case in the criminal court as would preclude on remission further proceeding in the Juvenile Court. Cf. *Trignani's Case,* 150 Pa. Superior Ct. 491, 28 A. 2d 702.

Appellant's next assertion is that a juvenile has a constitutional right to a speedy and final disposition of the murder indictment. The adjudication of delinquency and the commitment under The Juvenile Court Law is not a criminal trial but an action looking to treatment, reformation, and rehabilitation of the child. *Com. v. Fisher,* 213 Pa. 48, 62 A. 198. Under its express provisions The Juvenile Court Law does not take away the right of the courts of quarter sessions and of oyer and terminer to try a child on an indictment for any offense where the interests of the state demand such trial. Section 18, 11 PS §260. But where, as here, the authorities decide that a criminal trial is unneces-

sary, the violation of law by the child may constitute the child a delinquent in proceedings under The Juvenile Court Law. A child who has been adjudicated delinquent under the Law, rather than prosecuted for a criminal offense, has no inherent constitutional or legal right to ask that the juvenile court proceedings be set aside and that he be proceeded against criminally. It was stated in *Com. v. Carnes*, 82 Pa. Superior Ct. 335, 339, that: "The purpose of the act is reformation, not punishment. The State as parens patriae has the right to save a child from prosecution and punishment and, as against this right, neither the child nor its parents can insist that the child shall be tried for a criminal offense with which he may have been charged. The right to trial by jury vouchsafed to us by constitutional guarantees is the right to be tried in that manner, if tried. The Constitution has never been held to guarantee to the citizen the right to insist that he be tried for a crime if the State determines that it is to the interest of the citizen and the State that he shall be saved from such an ordeal." There has been no violation of any constitutional right which appellant might have to a speedy trial. The matter of trial is not involved in the absence of any proceeding on the indictment.

It is argued on behalf of appellant that he was adjudicated delinquent and committed on hearsay testimony in violation of the fundamental rules of evidence. Appellant freely admitted facts showing his violation of law and his delinquency, and the court's finding of delinquency is therefore supported by competent evidence of record. It was not necessary to rely upon hearsay testimony to support the basic finding of delinquency, and it does not appear that hearsay testimony or ex parte reports were used by the court in making its determination and adjudication. As the

basic finding of delinquency was supported by competent evidence, the admission of hearsay testimony would not constitute reversible error. Our statements in *Holmes Appeal,* supra, 175 Pa. Superior Ct. 137, 103 A. 2d 454, regarding the applicability of the rules of evidence to juvenile court proceedings and the use of hearsay evidence are relevant here.

In this appeal, also, counsel contends that the juvenile's constitutional right against self-incrimination was violated. Appellant was called, interrogated by the court, and freely admitted acts constituting a violation of law and forming the basis of the delinquency adjudication. For reasons set forth at length in the *Holmes Appeal,* there was no infringement in this proceeding of any privilege guaranteed the juvenile against self-incrimination.

What we said in the *Holmes Appeal* is controlling on the question of the right of appellant's attorney to inspect the court record and files dealing with the juvenile. In the present case the parents of the juvenile had notice of the proceeding; they were present and were examined as witnesses at the court hearing at which the delinquency charge was established.

The order of the court below is affirmed