## Holmes Appeal.

138

Argued April 17, 1953; reargued October 7, 1953. Before RHODES, P. J., HIRT, RENO, ROSS, GUNTHER and WRIGHT, JJ.

*William J. Woolston,* for appellant.

*Samuel Dash,* Assistant District Attorney and *Frank P. Lawley, Jr.,* Deputy Attorney General, with them *Michael von Moschzisker,* First Assistant District Attorney, *Richardson Dilworth,* District Attorney, *Harry F. Stambaugh,* Special Counsel and *Harrington Adams,* Deputy Attorney General, for appellee.

OPINION BY RHODES, P. J., March 16, 1954:

This appeal questions the legality of an order of the Municipal Court of Philadelphia, Juvenile Division, committing Joseph Holmes, aged 16, to the Pennsylvania Industrial School at White Hill, as a delinquent child under The Juvenile Court Law of June 2, 1933, P. L. 1433, as amended, 11 PS §243 et seq.

Joseph Holmes was born on May 7, 1936. He was adjudged delinquent on August 19, 1949, by the Municipal Court of Philadelphia, Juvenile Division, upon a petition alleging that he was involved in a highway

robbery. At that time he was placed on probation. Subsequently, on January 19, 1951, he was exonerated of participation in a burglary, and allowed to continue on probation, although his record showed absence from school for sixty-seven days of the current school year. Between January of 1951 and August of 1952, the school authorities advised the Juvenile Court of Holmes' persistent absence from school and the continuation of his truancies. Holmes was again taken into custody on August 18, 1952, for a delinquency involving highway robbery and assault and battery. After a hearing he was committed to Pennypack House for training, where he remained for two months, or until November 12, 1952, at which time he was discharged and placed on probation.

On December 23, 1952, Holmes was taken into custody on a delinquency petition alleging larceny of an automobile, operating an automobile without the owner's consent, and operating an automobile without a driver's license. He was given a hearing before the Juvenile Court on January 7, 1953. At this hearing Holmes denied knowledge that the car was stolen and stated that he was told it belonged to an uncle of one of his companions. Holmes, however, admitted driving the car without a license. The Juvenile Court adjudged Holmes delinquent on the charge of operating a motor vehicle without a license, although in so doing the court inadvertently used the words "We will mark him guilty on this charge." Holmes was committed to the county prison pending a hearing on other charges.

On January 12, 1953, a petition was filed setting forth Holmes' delinquency by reason of his participation in an armed robbery of Our Lady of Victory Church at 54th and Vine Streets, Philadelphia. Wideman, a companion of Holmes in the stolen automobile, signed a confession and, upon a criminal trial, was convicted

on the charge of armed robbery at the church. Wideman's signed confession, used against Wideman at the trial, implicated Holmes, Richard Hodges, and Charles Clark as participants in the robbery. However, at a hearing held on January 23, 1953, before Judge PROPPER on the delinquency petition, Hodges and Holmes denied knowledge that the car was stolen and denied participation in the robbery. At the conclusion of this hearing Judge PROPPER revoked Holmes' probation and ordered him committed to the Pennsylvania Industrial School at White Hill. In making the commitment Judge PROPPER referred to Holmes' prior record in the Juvenile Court. Meanwhile, counsel entered an appearance for Holmes. Appellant's attorney then sought permission to inspect the juvenile court file, including the reports of court investigators. The court permitted inspection of the notes of testimony and records of the Juvenile Court relating to Holmes, but denied the right of appellant's attorney to inspect the reports of court investigators. At the request of appellant and his attorney, the court granted Holmes a rehearing, which was held on March 6, 1953. Over objection of appellant's attorney, the Commonwealth offered additional evidence in an attempt to establish Holmes' delinquency as to the theft of the automobile and participation in the church robbery. However the Commonwealth's witnesses, Wideman and Clark, repudiating prior confessions, testified that Holmes, who was with them at the time, did not know the car was stolen and did not participate in the robbery. At the conclusion of this testimony the court, after reciting Holmes' record in the Juvenile Court, reiterated its adjudication of delinquency, basing such finding on participation in the robbery and driving a stolen car without a license while on probation. Accordingly the court committed Holmes to the Pennsylvania Indus-

trial School at White Hill. He has appealed from that order.

Appellant asserts that the adjudication of delinquency and the commitment violate his constitutional right and privilege against self-incrimination. As stated, Holmes had been adjudicated a delinquent as of August 19, 1949, at which time he was placed on probation. The jurisdiction of the Juvenile Court attached and the status of the minor as a delinquent was established from that time. As a delinquent he was on probation and subject to the jurisdiction and supervision of the court. The objective of the court under the doctrine of parens patriae is to promote the best interests of both the state and the child. On the basis of the original adjudication of delinquency, the court had the power to revoke its order placing the minor on probation, and to commit him to an institution for training. Actually, the commitment appealed from was justified under the prior adjudication of delinquency, and no question regarding the alleged right against self-incrimination is involved. If, however, we consider the delinquency petition filed December 23, 1952, relating to larceny of an automobile and the operation of a motor vehicle without a license, and the hearing, adjudication and commitment thereunder, as a separate proceeding, there is in any event no violation of the privilege against self-incrimination established. Article I, §9, of the Constitution of Pennsylvania provides: "In all criminal prosecutions, the accused . . . cannot be compelled to give evidence against himself, . . ." As clearly appears in *Com. v. Fisher*, 213 Pa. 48, 62 A. 198, dealing with the predecessor of the present Juvenile Court Law, a proceeding under such Law is not a criminal case, but rather a procedure intended to save a child who violates the law from the ordeal of a criminal trial, and to provide for his treatment

under court supervision. It has been compared to an action in equity. The purpose underlying the Law is to avoid branding the child with the stigma of criminality and to insure the growth of the child as a useful member of society. Therefore many of the constitutional guarantees granted to one formally charged with a criminal offense are not applicable to a proceeding under The Juvenile Court Law. As stated in *Com. v. Fisher,* supra, 213 Pa. 48, 53, 62 A. 198, 200, ". . . there was no trial for any crime here, and the act is operative only when there is to be no trial. The very purpose of the act is to prevent a trial, though, if the welfare of the public require that the minor should be tried, power to try it is not taken away from the court of quarter sessions, . . ." A delinquency proceeding in a children's court is not a criminal trial, hence the privilege against self-incrimination does not apply to the questioning of the juvenile. 8 Wigmore, Evidence, §2252, n. 10, (3d Ed.) ; *People v. Lewis,* 260 N. Y. 171, 183 N.E. 353, 86 A.L.R. 1001 (certiorari denied in 289 U. S. 709, 53 S. Ct. 786, 77 L. Ed. 1464) ; 31 Am. Jur., Juvenile Courts and Offenders, §42, p. 807. Furthermore, ordinarily, when the juvenile court assumes jurisdiction, makes an adjudication of delinquency and commits a child, it could not certify the case to the court of quarter sessions for criminal prosecution based on the same violations of law. *Trignani's Case,* 150 Pa. Superior Ct. 491, 494, 28 A. 2d 702.

Section 19 of The Juvenile Court Law of 1933, 11 PS §261, provides: "No order made by any juvenile court shall operate to impose any of the civil disabilities ordinarily imposed by the criminal laws of the Commonwealth, nor shall any child be deemed to be a criminal by reason of any such order or be deemed to have been convicted of crime. The disposition of a child or any evidence given in a juvenile court shall

not be admissible as evidence against the child in any case or proceeding in any other court." It is settled that constitutional guarantees applicable to criminal proceedings are inapplicable to proceedings in the juvenile court. *Ex parte Januszewski,* 196 F. 123; *Cinque v. Boyd,* 99 Conn. 70, 121 A. 678; *In re Sharp,* 15 Idaho 120, 96 P. 563; *Lindsay v. Lindsay,* 257 Ill. 328, 100 N.E. 892; *Wissenburg v. Bradley,* 209 Iowa 813, 229 N.W. 205; *Ex Parte Naccarat,* 328 Mo. 722, 41 S.W. 2d 176; *Gerak v. State,* 22 Ohio App. 357, 153 N.E. 902; *Com. v. Fisher,* supra, 213 Pa. 48, 62 A. 198; *Petition of Morin,* 95 N. H. 518, 68 A. 2d 668. The proceeding in juvenile court is not in substance adverse; nor is it wholly an ex parte matter. In exercising its jurisdiction under the Law, the juvenile court functions as a court of law and the elemental essentials of due process and fair play should be observed.

Appellant also claims the adjudication of delinquency and the order of commitment are invalid because based on hearsay evidence. Again, strictly speaking, the question of the admissibility of hearsay evidence in the juvenile court proceeding does not here arise since the present commitment could rest on the prior adjudication of delinquency and the revocation of probation. In any event there is sufficient admissible evidence in the record to support the court's finding of delinquency based on the violations of the law set forth in the delinquency petition of December 23, 1952. Appellant admitted operating the automobile without a license, though he denied knowing that it had been stolen; he also denied that he had been involved in the robbery at the church. Further, appellant's companions admitted in the juvenile court proceeding that they were tried and convicted on charges of robbery and larceny of the car, although they repudiated previous written confessions as to such

charges. The court had before it the previous record of appellant, including adjudications of delinquencies and appellant's probation record. While it is doubtful that prior records could, under settled rules of evidence, be used as the basis for an adjudication of delinquency, it is clear that the court could consider appellant's prior record in determining what treatment authorized under the Law would be in the best interests of the child and the state.

Even in ordinary civil litigation and trial, hearsay evidence, admitted without objection, if relevant and material, may be given the value of direct evidence. *Poluski v. Glen Alden Coal Co.*, 286 Pa. 473, 133 A. 819; *Sledzianowski Unemployment Compensation Case*, 168 Pa. Superior Ct. 37, 40, 76 A. 2d 666. Whatever may be the rule in ordinary litigation, all the rules of evidence cannot be applicable to the fullest extent in juvenile court proceedings. See 5 Wigmore, Evidence, §1400 (3d Ed.). Such proceedings do not involve a trial, or criminal charges, and, in view of their primary purpose, must be conducted on a comparatively informal basis. *Com. ex rel. Rogers v. Daven*, 96 Pa. Superior Ct. 556, 560, 561. At the same time, the proceeding is an action in a court of record, the court must have jurisdiction, its basic findings must be supported by evidence and the rudiments of procedural due process and fair play must be observed. The record must be legally and factually adequate to sustain the findings of fact and order of commitment. *Weintraub Appeal*, 166 Pa. Superior Ct. 342, 351, 71 A. 2d 823. Within this framework the juvenile court is, under the Law, granted broad discretionary power. The action of the juvenile court is always subject to appellate review and correction for errors of law or abuse of discretion. *Rose Child Dependency Case*, 161 Pa. Superior Ct. 204; 54 A. 2d 297.

It is contended that the court had no authority to commit the juvenile without notice to its parents, guardian, or person having control of the child. Under section 4 of the Law, 11 PS §246, proceedings may be initiated by petition setting forth the fact the child is neglected, dependent, or delinquent, or where a child is committed by a magistrate for violation of law. The petition must set forth also the names of the parent or guardian. The Law clearly contemplates that the parents, guardian, or person in control of the child shall receive notice of the proceeding. And as a rule it is an abuse of discretion for the court to enter into a hearing and make an adjudication without giving the persons having custody notice and an opportunity to be heard. *Rose Child Dependency Case,* supra, 161 Pa. Superior Ct. 204, 54 A. 2d 297. Holmes previously had been adjudged delinquent, and he was on probation and under the jurisdiction of the court when the order of commitment appealed from was made. Under the court's continuing jurisdiction, deferred committal was as much within the court's authority as immediate committal. *Petition of Morin,* supra, 95 N. H. 518, 68 A. 2d 668, 670. Presumptively, proper notice was given to appellant's parents at the time of the original delinquency adjudication. Moreover, there is evidence in the record showing that Holmes' mother had full notice of his repeated delinquencies and truancies, and that she was unable to properly control or discipline the child. We think it sufficiently appears that there was a compliance with the requirement of notice in this case. The court, in exercising its discretion, was not bound to accept the offer of appellant's uncle and aunt to furnish appellant with a suitable home, but, in view of appellant's conduct, could commit him to an institution for corrective training.

We have made reference to the fact that prior to the final hearing of March 6, 1953, appellant's attorney made a formal request by letter, asking the right to inspect all the reports and recommendations made to the Juvenile Court concerning this minor, including the reports of probation and interviewing officers. The court allowed the attorney to inspect the notes of testimony and any statements made by the juvenile to court representatives, but denied the right to inspect any reports which the court considered confidential, including the reports of probation officers. Counsel now contends that on the minor's behalf he had a fundamental right to inspect all the court records, and that the action of the court in limiting the right of inspection was error. Section 3 of The Juvenile Court Law of 1933, as amended, 11 PS §245, provides: "All sessions of the juvenile court shall be held separate and apart from sessions of the court held for the purpose of its general, criminal, and other business. The records of the proceedings of the juvenile courts shall be kept in a docket separate from all other proceedings of such courts, and shall be withheld from indiscriminate public inspection, but shall be open to inspection by the parent or other representative of the person, institution, association or society concerned, and other persons having a legitimate interest." The word "record" in this section of the Law is used in its ordinary meaning to include the pleadings or petitions, docket entries, notes of testimony and order of the court. Neither the Commonwealth's file nor the reports of probation officers are ordinarily considered parts of the record in this sense. For the protection of the child, the Law provides that even the ordinary formal record, including the testimony, may be withheld from indiscriminate public inspection. The Commonwealth concedes that the ex parte reports of probation offi-

cers and other court employes could not properly form the basis for the adjudication of delinquency,[1] whatever effect such reports might be accorded by the court in its order providing for the care, guidance, and control of the child. See section 8 of the Law, as amended, 11 PS §250, defining the powers of the court as to disposition of the child. We are of the opinion that neither appellant nor his attorney was deprived of any fundamental right to inspect the record of the proceedings in this case.

At the rehearing on March 6, 1953, granted appellant as a matter of right (section 15 of the Law, 11 PS §257), the Commonwealth offered additional evidence to establish further delinquencies. Appellant contends it was error to allow the Commonwealth to introduce such evidence on rehearing. We decided in *Weintraub Appeal,* supra, 166 Pa. Superior Ct. 342, 351, 71 A. 2d 823, that on a rehearing under section 15 the Commonwealth was not obliged to produce evidence but could rely upon the record previously made. Having in mind the broad purpose of the Law, the rehearing granted under section 15 is general, and any relevant evidence may be offered by a proper party, although repetition is unnecessary. There was no error in allowing the introduction of additional evidence at the rehearing by the Commonwealth.

The order of the court below is affirmed.

---

[1] Cf. *Com. ex rel. Mark v. Mark,* 115 Pa. Superior Ct. 181, 182, 175 A. 289; *Com. ex rel. McClenen v. McClenen,* 127 Pa. Superior Ct. 471, 193 A. 83; *Com. ex rel. Knode v. Knode,* 145 Pa. Superior Ct. 1, 20 A. 2d 896.