Commonwealth *v.* Henig, Appellant.

Argued March 18, 1963.   Before RHODES, P. J., ER-
VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and
FLOOD, JJ.

*Geneva M. Henig,* appellant, in propria persona.

*Paul R. Sand,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., April 18, 1963:

This is an appeal taken by Geneva M. Henig, the natural parent of Aileen Henig, from an order affirming a previous order which committed the said Aileen Henig to the Wallingford Home of the Orphans' Society of Philadelphia, and placing her there in their custody as a ward of the Juvenile Court of Delaware County.

The case resulted from the taking into custody of Aileen Henig, a twelve year old girl, who was apprehended on March 22, 1962, by the Radnor Township police while in Woolworth's department store located in Wayne, Pennsylvania. The child was caught in the act of shoplifting two pairs of nylon stockings valued at seventy-nine cents a pair, three comic books valued at fifteen cents each, and one comb valued at twenty-nine cents, from a counter in this department store. The total value of the articles was $2.32.

Although the child actually committed a crime, since she had no previous record of a violation of the law the normal disposition of this matter would have resulted in the return of this child to the custody of her parents without probationary supervision. Because of

the parents' failure to cooperate with the court and the juvenile staff, the lower court felt that a period of detention was necessary in order to more thoroughly evaluate the situation. It was therefore ordered on March 23, 1962, that the staff make an investigation, the case to be returned to court if the family did not cooperate. Two months later another hearing was held before the Honorable WILLIAM R. TOAL, as a result of which it was determined to hold Aileen in detention for further study because the mother not only refused to cooperate, but actively endeavored to obstruct the course of the investigation. She made appointments with the juvenile authorities to discuss Aileen and then either cancelled these appointments or failed to show up. Her attitude was that her child was guilty of no wrongdoing, the police were not telling the truth, and that the child need not answer any questions directed to her by the staff or court psychologist and court psychiatrist.

On July 13, 1962, another hearing was held which developed the fact that from June first until the hearing neither Mr. or Mrs. Henig made any effort to see or visit with Aileen in the detention home although Mrs. Henig had been repeatedly requested by the staff to do so.

At the hearing the court found Aileen to be delinquent, and decided that it was best for the welfare of the child that she be committed to the Wallingford Home of the Orphans' Society of Philadelphia for such time as was necessary in the opinion of the Juvenile Court staff and the authorities of the home; that she remain there in custodial care; and that she be declared a ward of the court.

On August 1, 1962, the Henigs petitioned the court for a rehearing which was held September 7, 1962, at which the lower court ruled that the adjudication in the case was final. This ruling of the lower court has

now been appealed to this Court on the ground that the court below violated the constitutional rights of the juvenile by finding her delinquent and committing her to a custodial institution.

A petition for a writ of habeas corpus was also filed with the Superior Court which was denied per curiam February 18, 1963.

On January 25, 1963, another hearing was held by the Juvenile Court, Judge TOAL presiding, at which time it appeared that the staff of the Wallingford Home were of the opinion that Aileen had reached a point where further help from that institution was not indicated and that additional progress would depend upon association with her family and their participation in her life.

Under these circumstances, and in view of the excellent progress which Aileen had shown at the home, the court decided that further custodial care was not necessary and, accordingly, directed that Aileen be discharged from the custody and care of the Wallingford Home and returned to the custody of her parents. The court ordered her discharge effective the same day and further ordered that the existing support order entered against the parents be thereby cancelled, together with all arrearages.

The appellant contends that the actions of the lower court in this matter have violated her right under the Constitutions of the United States and the Commonwealth of Pennsylvania to a fair trial, in that she was deprived of liberty without due process of law; in that the judge sitting in the lower court was biased and prejudiced; in that she was not informed of every charge against her nor was she given an opportunity to refute them in open court; in that she was not permitted to be present during all courtroom proceedings; in that she was not permitted to cross-examine witnesses; in that she was not permitted to be a witness

for herself or to have a public trial or to have a jury trial; in that she was not permitted bail, and was held in involuntary servitude; and in that she was not at liberty to be with her family free from the "persecution of public officials". She further contends that the proceedings in the Juvenile Court of Delaware County were contrary to the standards of impartial justice and unconstitutional.

After a thorough review of the record, we can find no merit in any of these contentions. The hearings held by the Court of Quarter Sessions of Delaware County were conducted completely in accordance with the requirements specified in the Juvenile Court Law. Act of June 2, 1933, P. L. 1433, 11 P.S. 243 et seq., as amended. The constitutionality of the procedures in Juvenile Court was tested under the prior act (Act of April 23, 1903, P. L. 274) in *Commonwealth v. Fisher,* 213 Pa. 48, 62 A. 198, wherein the Court held that to save a child from becoming a criminal, or from continuing in a career of crime, to end in maturer years in public punishment and disgrace, the legislature surely may provide for the salvation of such a child, if its parents or guardian be unable or unwilling to do so, by bringing it into one of the courts of the state without any process at all, for the purpose of subjecting it to the state's guardianship and protection.

The Juvenile Court proceedings are not criminal in nature but constitute merely a civil inquiry or action looking to the treatment, reformation, and rehabilitation of the minor child, and, therefore, many of the constitutional guarantees afforded to a criminal defendant are not available and not necessary. *Holmes Appeal,* 175 Pa. Superior Ct. 137, 103 A. 2d 454, affirmed 379 Pa. 599, 109 A. 2d 523; *Mont Appeal,* 175 Pa. Superior Ct. 150, 103 A. 2d 460.

In the present case there was clearly sufficient direct evidence to warrant the adjudication by the lower

court that Aileen Henig was a delinquent under the law, viz., the testimony of the Radnor Township police officer who had observed Aileen in the store, and after waiting for her at the store's exit accompanied her to the office whereupon examination of her clothes and parcels disclosed the stolen articles. As a result of her having committed this crime amounting to petty larceny, she was properly within the jurisdiction of the Juvenile Court. The lower court acted correctly and with due regard to the requirements of the Juvenile Court Law, and its determination that the best interests and welfare of the child required the committing of the juvenile to a noncorrectional institution is well within its discretion. From our review of the record we conclude that the actions of the lower court have proved beneficial to the child in spite of the lack of any assistance on the part of the child's parents.

Order affirmed.