In the Interest of J.B.

Appeal of PG Publishing Company.

In the Interest of J.B.

Appeal of Trib Total Media, Inc.

In the Interest of J.B.

Appeal of Newspaper Holdings, Inc., t/d/b/a New Castle News.

Superior Court of Pennsylvania.

Argued Jan. 10, 2012.
Filed Feb. 22, 2012.

Frederick N. Frank, Pittsburgh, for PG Publishing, appellant (at 1502).

Ronald D. Barber, Pittsburgh, for Trib Total Media, appellant (at 1503).

James W. Manolis, New Castle, for Newspaper Holdings, appellant (at 1504).

James P. Barker, Office of the Attorney General, Harrisburg, for Commonwealth, appellee.

Stephen D. Colafella, Monaca and Dennis A. Elisco, New Castle, for J.B., appellee.

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN and COLVILLE *, JJ.

OPINION BY SHOGAN, J.:

Appellants, PG Publishing Company, Trib Total Media, Inc., and Newspaper Holdings, Inc., t/d/b/a New Castle News (collectively "the News Media"), each ap-

* Retired Senior Judge assigned to the Superior Court.

peal from the single order which denied their respective petitions to intervene in the above-captioned matter. We affirm.

We summarize the history of this case as follows. It is alleged that on February 20, 2009, J.B., who was 11 years old at the time, shot Kenzie Marie Houk in the back of the head. Ms. Houk died from the gunshot wound, and her unborn baby died due to lack of oxygen. The Commonwealth charged J.B. with homicide, 18 Pa. C.S.A. § 2501, and homicide of an unborn child, 18 Pa.C.S.A. § 2603, in the criminal division of the Court of Common Pleas. Counsel for J.B. filed a petition to decertify the matter to juvenile court. The trial court denied the decertification petition.

J.B. took an appeal to the Superior Court, and the matter was remanded to the trial court on March 11, 2011. *Commonwealth v. Brown*, 26 A.3d 485 (Pa.Super.2011). On August 23, 2011, the trial court entered an order decertifying the case to the juvenile division. Thereafter, the juvenile court held a status conference and set a date of September 27, 2011 for the adjudication hearing. The juvenile court also ordered the following:

> Pursuant to the Juvenile Act, 42 Pa. C.S.A. Section 6336(d) and (e), the general public shall be excluded from the adjudication hearing. The parties, their counsel, witnesses, the immediate family of the victim (three individuals), any legal counsel for the family of the victim, the victim advocate of the Crisis Shelter, representatives of Lawrence County Juvenile Probation, and the immediate family of the minor (three individuals), shall be admitted by the Court to attend the Hearing.

Juvenile Court Order, 9/15/11.

On September 20, 2011, PG Publishing filed a petition to intervene and a motion to open proceedings. Trib Total Media and Newspaper Holdings each filed similar petitions to intervene and open proceedings. On September 23, 2011, following oral argument, the juvenile court entered an order denying the petitions to intervene and motion to open pursuant to section 6336(d) and (e) of the Juvenile Act. Order of Court, 9/23/11, Docket Entry 121. On September 26, 2011, the News Media collectively filed their notices of appeal.[1] The Superior Court entered an order staying the juvenile proceedings pending disposition of the appeals.

■■■ Our standard of review of a trial court's decision to grant or deny access to judicial proceedings is an abuse of discretion. *In the Interest of M.B.*, 819 A.2d 59, 61 (Pa.Super.2003). In this Commonwealth, there is a presumption, under both the Pennsylvania Constitution and common law, that all court proceedings are open to the public. This presumption extends to not only criminal and civil proceedings but also to juvenile dependency proceedings. *See id.* (applied in juvenile dependency proceeding); *see also, Storms v. O'Malley*, 779 A.2d 548, 569 (Pa.Super.2001), *appeal denied*, 570 Pa. 688, 808 A.2d 573 (2002) (applied in civil action); and *Commonwealth v. Contakos*, 499 Pa. 340, 453 A.2d 578 (1983) (plurality) (criminal case application).

*Appeal at Docket Number 1502 WDA 2011*

We first address the appeal presented at 1502 WDA 2011, wherein PG Publishing presents the following issues for our review:

> 1. Whether this Court's finding in *In re M.B.*, 819 A.2d 59 (Pa.Super.2003)

---

1. PG Publishing filed an appeal, which has been docketed at 1502 WDA 2011. Trib Total Media filed an appeal, which has been docketed at 1503 WDA 2011. Newspaper Holdings filed an appeal, which has been docketed at 1504 WDA 2011.

created a brightline distinction between juvenile dependency and juvenile delinquency proceedings as to the right of members of the media to access juvenile delinquency proceedings?

2. Whether the [juvenile] court committed an error of law by finding that total closure of a juvenile delinquency proceeding is necessary when a member of the media seeks access to the juvenile delinquency proceeding?

3. Should the media be denied access to the instant juvenile delinquency proceeding as a party with a "proper interest?"

> a. Whether the party requesting closure of the proceedings presented sufficient evidence to rebut the constitutional presumption of openness by establishing that closure serves an important governmental interest and that there is no less restrictive way to serve the important governmental interest?
>
> b. Whether the party requesting closure of the proceedings presented sufficient evidence to rebut the common law presumption of openness by establishing that his interest in secrecy outweighs the presumption of openness?

Brief for PG Publishing Company at 7.

At the outset, we offer a brief overview of the relevant law in this area. The Pennsylvania Legislature has set forth the law relating to the care, guidance, control, placement, trial and commitment of delinquent, dependent and neglected children under seventeen years of age in Pennsylvania's Juvenile Act ("Juvenile Act"). 42 Pa.C.S.A. §§ 6301–6375.

**2.** The purpose of the Juvenile Act is as follows:

Pursuant to the Juvenile Act, juveniles are not charged with crimes. Rather, they are charged with committing "delinquent acts." 42 Pa.C.S.A. § 6302. Under the Juvenile Act, juveniles do not have a trial. They have an adjudicatory hearing. 42 Pa.C.S.A. §§ 6303, 6341. If the court finds, on proof beyond a reasonable doubt, that the child committed the delinquent acts, the juvenile is adjudicated delinquent. The child is not convicted. 42 Pa.C.S.A. § 6341. The Juvenile Act specifically states that an adjudication under its provisions is not a conviction of crime. 42 Pa.C.S.A. § 6354.

As this Court has explained:

> [i]t is true that juvenile courts concern themselves with acts which would be considered criminal if they were committed by adults. Our Legislature, however, has seen fit through the Juvenile Act to authorize separate non-criminal proceedings to adjudicate these matters, precisely because the perpetrators are not adults. [T]hese proceedings are materially different from criminal proceedings in many respects.

*In the Interest of R.A.*, 761 A.2d 1220, 1225 (Pa.Super.2000).

■ Indeed, the juvenile court system is markedly different from the criminal court system. As we long ago stated, "[t]he Juvenile Court proceedings are not criminal in nature but constitute merely a civil inquiry or action looking to the treatment, reformation, and rehabilitation of the minor child." *Commonwealth v. Henig*, 200 Pa.Super. 614, 189 A.2d 894, 896 (1963).

■ One of the stated goals of the Juvenile Act is to provide for the care, protection, and wholesome mental development of children.[2] *In re C.M.T.*, 861 A.2d

[c]onsistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervi-

348, 356 (Pa.Super.2004). The purpose of juvenile proceedings is to seek treatment, reformation and rehabilitation, and not to punish. *Id.* It cannot be ignored that one of the purposes of the Juvenile Act is to hold children accountable for their behavior. *Commonwealth v. B.D.G.*, 959 A.2d 362, 367 (Pa.Super.2008). To this end, the juvenile court system was designed to provide a distinctive procedure and setting to deal with the problems of youth. *In re C.M.T.*, 861 A.2d at 356.

"The rehabilitative purpose of the Juvenile Act is attained through accountability and the development of personal qualities that will enable the juvenile offender to become a responsible and productive member of the community." *In re R.D.R.*, 876 A.2d 1009, 1013 (Pa.Super.2005) (quoting *In re B.T.C.*, 868 A.2d 1203 (Pa.Super.2005)).

> Further, we are mindful that:
>
> [t]here is a compelling interest in protecting minor children's privacy rights and the protection of a minor child's privacy is a key aspect of the Juvenile Act.

*In the Interest of T.E.H.*, 928 A.2d 318, 323 (Pa.Super.2007). This Court has held that "Pennsylvania's Juvenile Act demonstrates our legislature's compelling interest in safeguarding children involved in juvenile proceedings." *In re M.B.*, 819 A.2d at 65.

■ The Juvenile Act provides for various degrees of openness in hearings on delinquency petitions. 42 Pa.C.S.A. § 6336. As a general rule, juvenile hearings are closed to all except "the parties, their counsel, witnesses, the victim and counsel for the victim, other persons accompanying a party or a victim for his or her assistance, and any other person as the court finds have a proper interest in the proceeding or in the work of the court."[3] 42 Pa.C.S.A. § 6336(d).

■ However, the public cannot be excluded from delinquency hearings involving (1) any felony allegedly committed by a juvenile of at least 14 years of age, or (2) certain enumerated felonies allegedly committed by a juvenile of 12 or 13 years of age. 42 Pa.C.S.A. § 6336(e). The enumerated felonies are essentially the same as those which are excluded from juvenile court jurisdiction.

This Court addressed, as an issue of first impression, the question of whether juvenile proceedings may be closed to the press and general public in *In the Interest of M.B.* Specifically before the Court in *In re M.B.* was a matter involving juvenile dependency proceedings, which were initiated after the eight-year-old sister of two minor children was murdered. The Westmoreland County Children's Bureau ("WCCB") brought a petition alleging that the children were dependents due to a lack of proper parental control. PG Publishing filed a motion seeking to open the juvenile dependency proceedings, which the juvenile court denied. PG Publishing then appealed to this Court.

sion, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community. 42 Pa.C.S.A. § 6301(b)(2). "This section evidences the Legislature's clear intent to protect the community while rehabilitating and reform-

ing juvenile delinquents." *In re J.C.*, 751 A.2d 1178, 1181 (Pa.Super.2000).

**3.** We note that, under Pennsylvania Rule of Juvenile Court Procedure 131 as well as the Juvenile Act, a juvenile's parent or guardian may be ordered by the court, when it is in the best interest of the juvenile, to be present. Pa.R.J.C.P. 131; 42 Pa.C.S.A. § 6310.

In a detailed holding, a panel of this Court stated the following:

> We hold that while there is a rebuttable constitutional presumption that juvenile dependency proceedings are open to the public, our courts possess an inherent power to control access to their proceedings and may deny access when appropriate. Once an interested party seeks access, however, the party seeking to keep the proceedings closed may rebut the presumption of openness by demonstrating that: (1) closure serves a compelling governmental interest, and (2) no less restrictive means to serve that interest exists.

*In re M.B.*, 819 A.2d at 60.

In *In re M.B.*, we ultimately ruled that WCCB and the guardian *ad litem* overcame the constitutional presumption of openness by demonstrating a compelling interest in protecting the children's privacy rights and establishing that no less restrictive means to serve the privacy interest than total closure of the proceedings existed.

With these concepts in mind, we now address the issues raised by PG Publishing. In its first issue, PG Publishing argues that this Court, in *In re M.B.*, created a "brightline" distinction between the rights of members of the media to access a juvenile *delinquency* proceeding versus the rights to access a juvenile *dependency* proceeding. PG Publishing believes the juvenile court in this matter committed an error of law in determining that no "brightline" distinction exists. PG Publishing contends that, pursuant to *In re M.B.*, when a member of the media with a "proper interest" seeks access to a juvenile delinquency proceeding, a different standard should be applied to the privacy interests of the juvenile and the media's right of access.

In support of its argument that a "brightline" distinction was created, PG Publishing cites the following language from *In re M.B.*:

> Nonetheless, we find that while PG Publishing may have a "proper interest" in these proceedings, it should not be granted access here because of the serious psychological and emotional harm that additional publicity may cause the children.[5]

[5] As the trial court emphasized, unlike children in juvenile delinquency proceedings [children in a juvenile dependency proceeding] 'have done nothing to bring public attention to themselves' and thus the public's interest 'is less keen here than it is ... in delinquency proceedings.' (Opinion & Order at 25.) *See also Ernst v. Children & Youth Services of Chester County*, 1993 WL 343375 (E.D.Pa. Sept. 3, 1993) at [sic] (noting that dependency hearings generally do not carry 'the indicia of a "criminal prosecution"' present in delinquency hearings).[ ]

PG Publishing's Brief at 14–15 (citing *In re M.B.*).

■ PG Publishing relies upon the language in footnote 5 to support its conclusion that there is a difference between the privacy interest of a juvenile involved in a dependency proceeding and juvenile involved in a delinquency proceeding. We must disagree.

In this matter, the juvenile court addressed the suggestion that a "brightline" distinction was created in *In re M.B.* with the following apt analysis:

> The News Media asserts that the *In re M.B.* Court adopted a bright line distinction between dependency proceedings and delinquency proceedings, thereby urging this Court to reject the notion that a juvenile deserves the same right to privacy in a delinquency hearing as a dependency hearing. This Court, however, does not interpret the case of *In re M.B.* in quite the same light as the News Media.

In *In re M.B.*, the Superior Court quoted the trial court's rationale in stating that "unlike children in juvenile delinquency proceedings [children in dependency proceedings] 'have done nothing to bring public attention to themselves'". 819 A.2d at 65, n. 5, This Court must respectfully disagree with the trial court's statement in this limited context. The Superior Court based its holding in *In re M.B.* on the fact that the dependency proceedings should be closed to the public due to privacy concerns regarding the young children involved. The Court considered the introduction of psychiatric, psychological, or medical testimony, which would be of such a private and personal nature that it should not be open to public scrutiny, in support of its conclusion. Although this Court cannot ignore the fact that these proceedings are not dependency proceedings, the Court still experiences similar concerns regarding the privacy interests of the juvenile during these proceedings.

Juvenile Court Opinion, 10/13/11, at 13–14.

Careful scrutiny of the language of footnote 5 in *In re M.B.* indicates that this Court was mentioning a slight nuance between the public's interest in dependency proceedings and the public's interest in delinquency proceedings. We agree with the juvenile court that *In re M.B.* was not creating any "brightline" distinction between the privacy interests of a juvenile in a dependency proceeding and a juvenile in a delinquency proceeding. We further note our concern that relying on the quoted language of *In re M.B.* in the manner suggested by PG Publishing would undermine the presumption of innocence that exists in all criminal and delinquency matters. There has yet to be an adjudication of delinquency in this case, and we cannot, thus, say that the juvenile has done any-

thing "to bring public attention to [himself]." Accordingly, we conclude that PG Publishing's claim that a different standard should be applied to the privacy interest of the juvenile subject to the delinquency petition herein lacks merit.

██  With respect to the second issue, we further disagree with PG Publishing that the juvenile court found "that 42 Pa. C.S.A. § 6336 only grants access to members of the media with a 'proper interest' if they are given limited access to a juvenile proceeding," and thereby erred in making that finding. PG Publishing's Brief at 20. We have thoroughly reviewed the record in this matter, including the juvenile court's opinion, and fail to see where the juvenile court made the blanket conclusion that members of the media may only be given limited access to a juvenile proceeding, as alleged by PG Publishing. Rather, we conclude that the juvenile court discussed the need for limiting access in its discussion of the presumption of access and addressed its conclusion in terms of the specific facts of this case. As the juvenile court accurately reasoned:

> Due to the extensive prior coverage of this case, any limited factual reporting, even with the identity redacted, would result in the same privacy infringements as if the News Media were directly reporting about the case without redactions.

Juvenile Court Opinion, 10/13/11, at 16. Thus, the instant claim that the juvenile court committed an error of law lacks merit.

PG Publishing next argues that the juvenile court abused its discretion and misapplied the law in denying the News Media access to the juvenile delinquency proceedings. PG Publishing asks this Court to review the instant case under

both the constitutional and common law balancing tests.

We reiterated in *In re M.B.* that Pennsylvania law provides both a constitutional and common law right of public access to judicial proceedings. Specifically, we noted the following:

There are two methods for analyzing requests for closure of judicial proceedings, each of which begins with a presumption of openness-a constitutional analysis and a common law analysis. *See R.W. [v. Hampe]*, 426 Pa.Super. 305, 626 A.2d [1218] at 1220 n. 3 [ (Pa.Super.2001) ]; *Storms [v. O'Malley]*, 779 A.2d [548,] 569 [ (Pa.Super.2001) ]. Under the constitutional approach, which is based on the First Amendment of the United States Constitution and Article I, Section 11 of the Pennsylvania Constitution, the party seeking closure may rebut the presumption of openness by showing that closure serves an important governmental interest and there is no less restrictive way to serve that interest. Under the common law approach, the party seeking closure must show that his or her interest in secrecy outweighs the presumption of openness. *See R.W.*, 426 Pa.Super. 305, 626 A.2d [1218] at 1220 n. 3; [*Katz v. Katz*, 356 Pa.Super. 461, 514 A.2d 1374, 1377 (1986) ].

*In re M.B.*, 819 A.2d at 62 n. 2.

We will first undertake a constitutional analysis of the request for closure of the juvenile proceedings. As we did in *In re M.B.*, we begin with the understanding that the constitutional presumption of openness applies. However, "[o]nce an interested party, such as the press, seeks access to such proceedings, the party seeking to keep the proceedings closed may rebut the presumption of openness by demonstrating that: (1) the denial of public access serves an important gov-

ernmental interest, and (2) no less restrictive means to serve that interest exists." *In re M.B.*, at 63.

To satisfy these requirements, the party seeking closure must demonstrate "that the 'material is the kind of information that the courts will protect and that there is good cause for the order to issue.'" A party establishes "good cause" by showing that opening the proceedings "'will work a clearly defined and serious injury to the party seeking closure.'" We have emphasized that "only a compelling government interest justifies closure and then only by a means narrowly tailored to serve that interest."

*Id.* (citations omitted).

In *In re M.B.*, our Court observed the following regarding a compelling government interest:

Pennsylvania's Juvenile Act, ..., demonstrates our legislature's compelling interest in safeguarding children involved in juvenile proceedings. Section 6336(d), ... explicitly provides:

Except in hearings to declare a person in contempt of court and in [certain delinquency] hearings as specified in subsection (e), *the general public shall be excluded from hearings under this chapter.* Only the parties, their counsel, witnesses, the victim and counsel for the victim, other persons accompanying a party or a victim for his or her assistance, and any other person as the court finds have a proper interest in the proceeding or in the work of the court shall be admitted by the court.

42 Pa.C.S.A. § 6336(d) (emphasis added). As originally enacted, the Juvenile Act had closed both delinquency and dependency proceedings to the public. In 1995, however, the legislature amend-

ed the Act to open certain *delinquency* proceedings to the public, *see* 42 Pa. C.S.A. § 6336(e), but it left dependency proceedings closed subject to a few exceptions, *see* 42 Pa.C.S.A. § 6336(d).

*In re M.B.*, 819 A.2d at 65 (emphasis in original).

We must note that, when our Legislature amended the Act to open certain delinquency proceedings to the public, it specified the requirements, not only on the basis of the delinquent act which was allegedly committed, but also on the basis of the age of the juvenile when the delinquent act was allegedly committed. *See* 42 Pa. C.S.A. § 6336(e)(1), (2). This codification further indicates an intent on the part of our Legislature to protect the privacy interests of children under a particular age.

▮ In addition, we observe that the 1976–Official Comment to section 6336 offered the following enlightening reflection which we find pertinent to the question of whether the state possesses a compelling interest in keeping the instant juvenile proceedings closed to the News Media:

In connection with subsection (d), . . . :

There has been some recent tendency to permit publicity [of] juvenile court proceedings on the theory that this will act as a curb to juvenile delinquency. There is little evidence to support this theory and considerable indication that it affords the hard-core delinquent the kind of recognition he wants. On the other hand, the harm it causes may be great in the case of the repentant offender.

42 Pa.C.S.A. § 6336, Official Comment– 1976.

In addressing the first prong of the relevant analysis, the juvenile court offered the following concerning the applicability of 42 Pa.C.S.A. § 6336 as evidence of the state's compelling interest in closing the juvenile proceedings:

Section 6336 was clearly implemented to protect the privacy interests of children who have had petitions for adjudication filed against them prior to reaching a designated age (fourteen or twelve, as applicable). Counsel for the News Media asserts that the juvenile in this case no longer maintains a privacy interest, as the public exposure during the criminal stage of these proceedings dissolved any privacy interests the juvenile previously maintained. Yet, the Court must wholly reject this argument.

It cannot be disputed that the press coverage of this case has been extensive. Yet, the Court must consider that the factors, which permit public exposure of a minor charged with murder, are procedural in nature. Under the Pennsylvania Crime's [sic] Code, it is mandatory that all homicide cases be first filed in an adult court regardless of the age of the alleged perpetrator. As a defendant in adult court, there is no expectation of privacy, which the defendant may assert on his own behalf, regardless of age. However, when such a case is transferred to the Juvenile Court system, the minor child is automatically entitled to the protections provided under the Juvenile Act.

It is undisputable that the Pennsylvania Legislature has carved specific exceptions to open certain delinquency proceedings to the public. *See* 42 Pa. C.S.A. § 6336(e). However, in crafting these exceptions, the Legislature undertook a special interest to expressly exclude children of a younger age. The News Media argues that since the minor child was almost 12 years old, section 6336(d) and (e) of the Juvenile Act should not apply. This Court again rejects their assertion. The State Legislature, in creating section[ ] 6336(d) and

(e) of the Juvenile Act, clearly provided that proceedings, involving minor children charged with murder, who are over the age of 12, at the time of the incident, shall be open to the general public.

The specific facts of this case bring the instant case under the provisions of Section 6336(d) and (e) of the Juvenile Act, in that the minor charged with the offense of murder was, clearly and without dispute, under the age of 12 at the time of the incident. Counsel for the media is not entitled to have this Court consider assertions which are not facts, specifically, that the child was "almost" 12 years of age. Thus, the Court concludes that another compelling state interest in closing the juvenile proceedings exists when dealing with children who have been charged with criminal offenses at a very young age.

While the [News] Media may contend that the juvenile's father and defense counsel have appeared on national television stations in regard to this case, the Court finds that the juvenile has not done anything which should be construed as a waiver of his expectation of privacy. The juvenile has never made any public statements or comments of any kind throughout the duration of this case.

Furthermore, the Court must consider the possibility that this case may proceed to a dispositional hearing, if this Court, following completion of an Adjudicatory Hearing, determines that the Commonwealth has met its burden of proof as to the allegations of delinquency. The dispositional phase of delinquency cases is substantially similar to a dispositional hearing in a dependency case, and could possibly include psychiatric and psychological testing to aid the court in determining whether detention of the child is necessary, and if so, under what circumstances.

Juvenile Court Opinion, 10/13/11, at 10–13.

■■■ We agree with the juvenile court in this instance and likewise conclude that the denial of public access to the juvenile proceedings at hand serves an important governmental interest. As we have discussed, our Legislature has set forth an instructive statute which evinces a compelling state interest in protecting the privacy of juveniles. 42 Pa.C.S.A. § 6336(e)(1), (2). Although PG Publishing argues that publicity in this case has been pervasive, we observe that there is no evidence that the juvenile, himself, has initiated contact with any media source. Moreover, as this Court stated in *In re M.B.*, regarding the fact that identities and facts of the case have already been disseminated in articles following the murder:

> This argument is spurious. While it is true that the children's names and certain details about their family life have been publicized, we believe, as the trial court did, that the fact that they have received some publicity enhances their need for privacy now.

*In re M.B.*, 819 A.2d at 64.

■■■ Furthermore, we do not agree with PG Publishing's provocative argument that, because J.B. was initially charged with the "heinous" crime of an "execution-style" murder in criminal court, the public policy to protect juveniles from the disclosure of details or facts which might psychologically or emotionally harm them does not attach in this proceeding. PG Publishing's Brief at 22–24. PG Publishing makes the following bald assertion:

> Every detail of the allegations against J.B. has been provided to the public in the published opinions of this Court and the Trial Court. Any expectation of privacy that would attach has long been lost.

*Id.* at 22. We discern no support for this argument. Rather, we consider this claim to be presumptuous in nature. Indeed, although circumstances surrounding the alleged delinquent act have been presented to the public due to proceedings in criminal court, it is still unknown what additional facts and evidence yet unrevealed would be offered at the upcoming juvenile proceedings. Once J.B.'s case was decertified to juvenile court, the attendant protections of the Juvenile Act were triggered. Thus, we conclude that PG Publishing's contrary claim is without merit. Accordingly, it is our determination that an important governmental interest exists in this matter, which rebuts the presumption of openness.

▬ We next address the second prong of the two-part constitutional analysis, and consider whether there are less restrictive means to serve the important governmental interest.[4] To this extent, we adopt as our own the following thoughtful analysis of the juvenile court:

> In considering this second factor, the Court has seriously evaluated whether there are less restrictive means to serve the compelling interests described above other than total closure of the proceedings. The Court finds that there is not a less restrictive means for the following reasons:

> The News Media has never proposed any other option other than granting the media and the general public access to the juvenile proceedings in this matter. Likewise, the Attorney General and counsel for the juvenile have strenuously argued that these proceedings must be closed. The Court, therefore, took the liberty of considering whether any other alternatives existed. The Court first looked to the official comment related to section 6336(d) of the Juvenile Act, which provides:

> > This section as drawn permits the court **in its discretion** to admit news reporters. This is frequently done with the **understanding that the identity of the cases observed will not be published,** a procedure generally satisfactory to the news media. 42 Pa.C.S.A. § 6336 cmt. 4(b) **(emphasis provided).**

> Although the News Media repeatedly referenced the official comment to section 6336, they never cited it in its entirety; they only referenced the fact that a court has the discretion to admit news reporters. This Court went on to consider whether it could admit the News Media, with the condition that the identity of the case would not be published; it was eventually determined that this option must be rejected. Due to the extensive prior coverage of this case, any limited factual reporting, even with the identity redacted, would result in the same privacy infringements as if the News Media were directly reporting about the case without redactions.

> Additionally, the Court believes that total closure is necessary if this case does in fact progress to a dispositional hearing, where the long-term goal will eventually become supervision and rehabilitation. The News Media is persistent in its rights to be present throughout the entire progression of this case, and this Court has serious reservations about its ability to ensure that any minor child can be properly rehabilitated if the dispositional hearing and review hearing are constantly being review[ed]

---

4. Although PG Publishing fails to present a specific argument regarding the second prong of the two-part constitutional analysis, we observe that PG Publishing, in the argument included in its Brief at pages 17–20 presents a claim that the juvenile court erred in finding that total closure of the juvenile proceedings was necessary.

and analyzed by the News Media and subsequently by the public in general.

For these reasons, this Court concludes that there are no less restrictive means other than total closure of these proceedings.

Juvenile Court Opinion, 10/13/11, at 15–16 (emphasis in original). We agree with the juvenile court that, under the facts of this case, there is no alternative short of closure of the juvenile court proceedings which will adequately serve the privacy interests of J.B.

Thus, having concluded that closure of the juvenile proceedings, under the constitutional analysis, serves a compelling government interest and that there is no less restrictive means to serve that interest, it is our determination that the juvenile court did not abuse its discretion in refusing to grant to the News Media access to the juvenile proceedings.

In its final issue, PG Publishing argues that the juvenile court proceedings should be open under the common law presumption of openness. PG Publishing contends that, under the unique facts of the case, "this matter is already fully public." PG Publishing's Brief at 25. PG Publishing claims that representatives of J.B. utilized the media to gain sympathy for his decertification to juvenile court, and now are being hypocritical in their effort to assert J.B.'s need for privacy.

■■■■ As we mentioned previously in this Opinion, under the common law approach, the party requesting closure of the proceedings must show that his or her interest in secrecy outweighs the common law presumption of openness. *In re M.B.,*

819 A.2d at 63 n. 2. While there is a common law right of public access to judicial proceedings, the press and the general public may be excluded "where such access may become a vehicle for harmful or improper purposes." *Id.* at 63 (citing *Katz v. Katz,* 356 Pa.Super. 461, 514 A.2d 1374 (1986)). In order to rebut this well-established presumption of openness, and to obtain closure of judicial proceedings and records, a party must demonstrate "good cause." *R.W. v. Hampe,* 426 Pa.Super. 305, 626 A.2d 1218, 1221 (1993) (citation omitted). "Good cause exists where closure is 'necessary in order to prevent a clearly defined and serious injury to the party seeking' it." *Id.*

■■■■ In regards to PG Publishing's repeated argument that the facts of this case have been made fully public, and, therefore, privacy is unnecessary, we conclude that this argument fails. At this juncture of the proceedings, no one is aware of the degree and extent of future evidence which may prove harmful to J.B. if brought before the public.[5] Therefore, we discern no merit to this claim.

Moreover, our review reflects that the clearly defined and serious injury which would be suffered by J.B. if the juvenile proceedings were open are the same injuries to his privacy that our Legislature addressed in 42 Pa.C.S.A. § 6336. Here, J.B. was under twelve-years-old when the alleged delinquent acts were committed. It is undisputed that, under these circumstances, J.B. falls within the age range which our Legislature understood needs to be protected from the harms of a public juvenile proceeding. We again repeat the

---

**5.** In fact, the argument presented by PG Publishing is itself contradictory. Initially, PG Publishing notes that J.B.'s representatives "actively curried media attention to acquire sympathy for his case during the decertification phase." PG Publishing's Brief at 25. In the very next paragraph, however, PG Publishing states, "no danger of an unfair trial by adverse publicity exists in this case, as the juvenile delinquency proceedings will not go before a jury, eliminating [ ] any prospect of an unfair trial." *Id.*

language from the comment to 42 Pa. C.S.A. § 6336, which states, "[t]here has been some recent tendency to permit publicity [of] juvenile court proceedings on the theory that this will act as a curb to juvenile delinquency.... On the other hand, the harm it causes may be great in the case of the repentant offender." 42 Pa. C.S.A. § 6336 Official Comment–1976.

In addition, we consider the following argument presented by then counsel for J.B., as illustrative that J.B.'s interest in secrecy in the proceedings outweighs the common law presumption of openness:

> Now, we do have prepared here the testimony from the juvenile probation officer here, Pat Micco, and he will be called. [J.B.'s counsel] will be questioning him on that, just to explain the rationale and the reason of why it's so important. In these types of cases, even adjudication, your Honor, is a two-prong case. Not only would the Court have to determine if a crime was committed and if the juvenile committed that crime, but to make an adjudication, the Court has to go another step and determine whether or not that juvenile is in need of rehabilitation. In the dispositional stage, it's even more important. This is not like an adult case. This is a case in which the Commonwealth has a special interest. The Commonwealth intervenes in the lives of children in order to protect children, both those who are dependent and those who are delinquents, Your Honor. The Commonwealth intervenes to protect and to rehabilitate, unlike the criminal situation and the criminal court where the question is, is a person guilty and then what punishment should be imposed. The focus is entirely different. **In juvenile court, much comes out that would be completely irrelevant in adult court. We need to hear from the relatives, we need to hear from the family and friends, we need to hear from counselors, physicians, psychologists, psychiatrists. We need to hear from a whole range of people. The discussion goes far beyond what we hear in adult court. It may talk about problems a mother or father has. It may talk about sexual or physical abuse. It may talk about drug or alcohol problems and issues, as well as mental health issues, not just with the juvenile, but with other members of the family that have affected the situation. To expect those people to be open and candid when they're interviewed, when they're talked to, when they're counselled [sic] with and when they work with juvenile probation, to expect that when the press is there, when the public is there, when every family issue and family problem, no matter how sensitive and private is discussed and put in the newspapers, would completely defeat the object and the purpose of the juvenile system. If we are going to decide if a child needs help and if we are going to determine what kind of help is needed, we need to have open and candid cooperation and discussion with a broad range of people. That cannot happen in the broad spotlight of the press.**

N.T., 9/23/11, at 58–60 (emphasis added).

Consequently, we conclude that good cause for closure exists in that closure is necessary in order to prevent serious injury to J.B. Thus, the claim offered by PG Publishing that, under the common law approach, the presumption of openness has not been rebutted lacks merit.

*Appeal at Docket Number 1503 WDA 2011*

We next address the appeal presented at Docket Number 1503 WDA 2011, which was filed by Trib Total Media. Here, Trib

Total Media presents the following issues for our review:

1. Whether the [juvenile] court erred in denying Appellant the right to intervene in the proceedings.

2. Whether the [juvenile] court erred in denying the general public or the media access to the juvenile proceedings.

3. Whether 42 Pa.C.S.A. § 6336 is unconstitutional under the Pennsylvania Constitution.

4. Whether the party requesting closure of the proceedings presented evidence sufficient to overcome the constitutional presumption that the proceedings shall be open by establishing that the denial of access to the proceedings serves a compelling government interest.

5. Whether the party requesting closure of the proceedings presented evidence sufficient to overcome the common law presumption that the proceedings shall be open by establishing that the party's interest in secrecy outweighs the presumption of openness.

Brief for Trib Total Media at 4.

Initially, we note appellate briefs must materially conform to the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. Chapter 21. Pursuant to Rule 2101, when a party's brief fails to conform to the Rules of Appellate Procedure and the defects are substantial, an appellate court may, in its discretion, quash or dismiss the appeal. Pa.R.A.P. 2101. Rule 2111 provides specific guidelines regarding the content of an appellant's brief. Pa.R.A.P. 2111. In addition, Rules 2114 through 2119 specify in greater detail the material to be included in briefs on appeal. Pa.R.A.P. 2114–2119.

Trib Total Media's brief does not comply with Pennsylvania Rule of Appellate Procedure 2119, which provides in pertinent part:

(a) **General rule. The argument shall be divided into as many parts as there are questions to be argued;** and shall have at the head of each part-in distinctive type or in type distinctively displayed-the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent.

Pa.R.A.P. 2119(a) (emphasis added). The argument portion of Trib Total Media's brief is not divided into as many parts as there are questions to be argued. Rather, Trib Total Media presents its five issues in a single argument. Trib Total Media's Brief at 8–12. While this defect in Trib Total Media's brief is substantial, it does not preclude our review of this matter. Accordingly, we will overlook the defect and proceed with our review.

Regarding Trib Total Media's Issues numbered 1, 2, 4, and 5, we observe that those claims challenge the juvenile court's conclusions with regard to whether the instant juvenile proceedings should be closed to the News Media and essentially mirror the issues raised by PG Publishing in its appeal.[6] In light of the fact that we have addressed these claims previously in this Opinion, as they were raised by PG Publishing, we decline to repeat our analysis. Rather, we refer the reader to our

---

6. With regard to Trib Total Media's Issue 1, which contends that the juvenile court erred in denying the News Media the right to intervene in the proceedings, we note Trib Total Media presents no specific discussion or applicable authority related to the law of intervention. Thus, we conclude that Trib Total Media intended to argue that the News Media should have been permitted to intervene because they had met the criteria under both the constitutional analysis and the common law analysis.

review of these issues set forth previously in this Opinion.

■ To the degree that Trib Total Media has included in Issue 3 of its appeal a challenge to the constitutionality of 42 Pa. C.S.A. § 6336, we must note that Trib Total Media has failed to develop a comprehensive argument on this claim. "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa.Super.2002); Pa.R.A.P. 2119(b). "Appellate arguments which fail to adhere to these rules may be considered waived, and arguments which are not appropriately developed are waived. Arguments not appropriately developed include those where the party has failed to cite any authority in support of a contention." *Lackner v. Glosser*, 892 A.2d 21, 29–30 (Pa.Super.2006) (citations omitted). This Court will not act as counsel and will not develop arguments on behalf of an appellant. *Irwin Union National Bank and Trust Company v. Famous and Famous and ATL Ventures*, 4 A.3d 1099, 1103 (Pa.Super.2010) (citing *Commonwealth v. Hardy*, 918 A.2d 766 (Pa.Super.2007), *appeal denied*, 596 Pa. 703, 940 A.2d 362 (2008)). Moreover, we observe the Commonwealth Court, our sister appellate court, has aptly noted that "[m]ere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter." *Boniella v. Commonwealth*, 958 A.2d 1069, 1073 n. 8 (Pa.Cmwlth.2008) (quoting *Commonwealth v. Spontarelli*, 791 A.2d 1254, 1259 n. 11 (Pa.Cmwlth.2002)).

Here, the argument portion of Trib Total Media's Brief does not contain meaningful discussion of, or citation to, relevant legal authority challenging the constitutionality of 42 Pa.C.S.A. § 6336. Trib Total Media's Brief at 8–12. In fact, completely lacking from this section is any discussion or citation to the language of 42 Pa.C.S.A. § 6336. This lack of analysis does not allow meaningful appellate review. Accordingly, because Trib Total Media's argument on this issue fails to set forth any meaningful discussion, we conclude that this issue is waived.

■ However, to the extent that Trib Total Media presents a vague argument that the statute is unconstitutional because it creates a blanket closure rule, we observe that the language of 42 Pa.C.S.A. § 6336 does not create such a rule. Rather, the statute implies that a juvenile court has the discretion to admit persons with a proper interest in the proceedings or in the work of the court. *See* 42 Pa.C.S.A. § 6336(d) (stating that "[o]nly the parties, their counsel, witnesses, the victim and counsel for the victim, other persons accompanying a party or a victim for his or her assistance, and any other person as the court finds have a proper interest in the proceeding or in the work of the court shall be admitted by the court."). The 1976–Official Comment to section 6336 states: "The section as drawn permits the court in its discretion to admit news reporters." 42 Pa.C.S.A. § 6336 Official Comment—1976. Thus, any claim that 42 Pa.C.S.A. § 6336 is unconstitutional because it creates a mandatory closure rule lacks merit.

In conclusion, we discern no merit to any of the claims presented by Trib Total Media in its appeal. Accordingly, it is our determination that the juvenile court did not abuse its discretion in denying access to the juvenile proceedings.

*Appeal at Docket Number 1504 WDA 2011*

We last address the appeal at docket number 1504 WDA 2011, which was filed by Newspaper Holdings, Inc. Newspaper

Holdings presents the following issues for our review:

1. Whether the [juvenile] court should have denied the newspaper the right to intervene in the juvenile proceedings.

2. Whether the [juvenile] court should have denied the general public and the media access to the juvenile proceedings.

Brief for Newspaper Holdings at 4.

Newspaper Holdings argues the juvenile court should have granted the petition to intervene and the motion to open the juvenile delinquency adjudication hearing to both the News Media and the general public. Newspaper Holdings contends that the juvenile court must employ a common law and constitutional analysis in determining whether juvenile delinquency proceeding should be open and such analysis would lead to the grant of the petition to intervene.

Newspaper Holdings argues that the presumption of openness applies in dependency proceedings and also applies in delinquency proceedings, and 42 Pa.C.S.A. § 6336(d) and (e) cannot be read to deprive the general public of the right to attend a juvenile delinquency adjudication hearing in all cases where a minor is less than 12 years of age at the time of the alleged conduct. Newspaper Holdings claims that the juvenile in this matter has no recognizable privacy interest, nor is there any other compelling governmental interest, sufficient to overcome the presumption that the delinquency proceeding must be open. Newspaper Holdings further believes that, even if there are compelling governmental interests sufficient to overcome the presumption of openness, there are other means, short of closure, to serve that interest.

Regarding these arguments presented by Newspaper Holdings, we again observe that the claims challenge the juvenile court's conclusions with regard to whether the instant juvenile proceedings should be closed to the News Media. These arguments mirror the issues raised by PG Publishing and Trib Total Media in their appeals. In light of the fact that we have addressed these claims previously in this Opinion, as they were raised by PG Publishing, we decline to repeat our analysis. Moreover, to the extent that Newspaper Holdings presents a challenge to the constitutionality of 42 Pa.C.S.A. § 6336, which mirrors the argument offered by Trib Total Media in its appeal, we likewise decline to repeat our analysis. Alternatively, we refer the reader to our review and analysis of the merits of these claims set forth previously in this Opinion.[7]

Again, we discern no merit to the claims raised by Newspaper Holdings in its ap-

---

7. Regarding Newspaper Holding's Issue 1, we note that the argument consists of the following:

> The right of The Newspaper to intervene in the juvenile proceedings is dependent upon The Newspaper's right to access the juvenile proceedings. *PA ChildCare LLC v. Flood,* 887 A.2d 309, 313 (Pa.Super.2005), citing *In the Interest of M.B.,* 819 A.2d 59 (Pa.Super.2003). The Newspaper is a member of the general public and a member of the news media and has a "proper interest" in the proceedings and in the work of the court within the meaning of 42 Pa.C.S. 6336(d). *In the Interest of M.B.,* 819 A.2d 59, 65 (Pa.Super.2003). For the reasons that follow, The Newspaper has a right to access the juvenile proceedings and the concomitant right to intervene. Consequently, the trial court erred when it denied The Newspaper's Petition to Intervene.

Brief for Newspaper Holdings at 11–12. As discussed in detail previously in this Opinion, because there is no merit to the News Media's claim of right to access to the proceedings, there is likewise no merit to the claim that the juvenile court erred in denying the petitions to intervene.

peal. Therefore, we conclude that the juvenile court did not abuse its discretion in denying access to the juvenile proceedings.

In conclusion, having determined that the issues presented by the News Media lack merit, we affirm the Order of the juvenile court as to the appeals docketed at 1502 WDA 2011, 1503 WDA 2011, and 1504 WDA 2011.

Order affirmed.