J-S25011-25

2025 PA Super 245

IN THE INTEREST OF: J.E., A MINOR   :   IN THE SUPERIOR COURT OF
                                    :            PENNSYLVANIA
                                    :
APPEAL OF: J.E., MINOR              :
                                    :
                                    :
                                    :
                                    :
                                    :
                                    :
                                    :   No. 2378 EDA 2024

Appeal from the Dispositional Order Entered August 20, 2024
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-JV-0001971-2023


BEFORE:  PANELLA, P.J.E., DUBOW, J., and BENDER, P.J.E.

OPINION BY PANELLA, P.J.E.:                 **FILED OCTOBER 28, 2025**

J.E., a juvenile, appeals from the dispositional order of the Court of
Common Pleas of Philadelphia County after he was adjudicated delinquent on
charges of possession of a firearm by a minor, 18 Pa.C.S.A. § 6110.1(a), and
possession of a firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1). J.E. argues that
the juvenile court erred in allowing his statements made to his physician to
be admitted because juvenile adjudications are "civil matters" and thus, the
physician-patient privilege applies pursuant to 42 Pa.C.S.A. § 5929. Because
juvenile adjudications are not "civil matter[s]" as contemplated by 42
Pa.C.S.A. § 5929, we affirm.

On November 15, 2023, J.E. was taken to the hospital by his father,
Dennis Bozeman, to treat what was identified as a close-range gunshot wound
to his left hand. J.E. was ineligible to possess a firearm due to his age and

because of a prior offense. He was charged with possession of a firearm by a minor, 18 Pa.C.S.A. § 6110.1(a), and possession of a firearm prohibited, 18 Pa.C.S.A. § 6105(a)(1).

Relevant to this appeal are the facts surrounding the introduction of J.E.'s medical records. On April 12, 2024, J.E. filed a motion in limine to preclude the introduction of J.E.'s medical records recording his statement to his physician. The trial court set forth the relevant information contained in the medical records.

> The first set of [J.E.'s] medical records were created on November 15, 2023 by Dr. Bennet at Lanenau Hospital. (N.T. 8/20/24, [at] 30). On November 15, 2023, [J.E.'s] uncle took [J.E.] to the Lanenau hospital after [J.E.] accidentally shot himself in the left hand with his own gun. (N.T. 8/20/24, [at] 31-35). Dr. Bennett treated [J.E.] that night and took notes of [J.E.'s] physical condition, injury, medical history, and treatment plan. (N.T. 05/31/24, [at] 12-13). In the notes, Dr. Bennet described the injury to be a "close-range gunshot wound" based on his observation that the injury was "one-centimeter entrance and exit wounds on the paler and dorsal surface of hand overlaying the fourth metacarpal" and that there were "black powder stains on the . . . patient's hand[.]" (N.T. 8/20/24, [at] 31).
>
> [J.E.'s] second set of medical records were created on December 12, 2023, by a surgeon, Dr. Petrucelli, during [J.E.'s] follow-up visit at Lanenau Hospital. (N.T. 8/20/24, [at] 30-31). At the visit, the Surgeon took notes of [J.E.'s] injury, physical condition, and medical history. (N.T. 05/31/24, [at] 12). While discussing medical history, [J.E.] stated to the Surgeon that he shot himself with his own gun, which the Surgeon recorded as a part of his medical notes. (N.T. 05/31/24, [at] 8); **see also** (Commonwealth response to Defense's Brief, 16). As part of the medical notes, Dr. Petrucelli stated that "the incident occurred when he [] accidentally shot himself in the left hand with his own handgun. It was low-velocity injury, close range." (N.T. 8/20/24, pg. 31).
>
> The defense filed a motion in limine to preclude the introduction of [J.E.'s] medical records, which recorded [J.E.'s] incriminating

statement made to his physician. (Defense Motion in Limine, 18). The Commonwealth then filed a response to the defense's brief on May 28, 2024. After reviewing both motions and hearing arguments from both the defense and the Commonwealth at the motion in limine hearing on May 31, 2024, the trial court denied [J.E.'s] motion to preclude the introduction of medical records containing [J.E.'s] incriminating statement. (N.T. 05/31/24, [at] 16).

Trial Court Opinion, 11/21/24 at 6.

An adjudicatory hearing was held on August 20, 2024. The Commonwealth presented testimony from J.E.'s father and J.E.'s medical records. At the conclusion of the hearing, the trial court substantiated the charges and adjudicated J.E. delinquent on both charges. He was sentenced to probation with numerous conditions. J.E. timely appealed. He filed a court ordered concise statement of errors complained of on appeal and the trial court filed an opinion in support of its decision. **See** Pa.R.A.P. 1925(a)-(b).

J.E. raises a single issue on appeal.

Did the [juvenile] court err by refusing to apply 42 Pa.C.S.[A.] § 5929 to preclude the admission of inculpatory statements [J.E.] made in confidence to his doctor solely based on its mischaracterization of adjudicatory hearings as criminal in nature, rather than its actual nature, that of a civil matter?

Appellant's Brief, at 2.

The issue raised by J.E. is one of statutory interpretation. Our standard of review of this matter is well-settled. While "[t]he Juvenile Act grants juvenile courts broad discretion when determining an appropriate disposition[,] . . . when the resolution of an issue turns on the interpretation

of a statute, our review is *de novo.*" ***In re C.A.G.***, 89 A.3d 704, 709 (Pa.

Super. 2014) (citations omitted).

> When construing a statute, our objective is to ascertain and effectuate the legislative intent. 1 Pa.C.S.A. § 1921(a). In pursuing that end, we are mindful that when the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. In addition, when the language of a statute is clear and unambiguous, the judiciary must read its provisions in accordance with their plain meaning and common usage. However, when the words of a statute are not explicit, courts should resort to other considerations including the General Assembly's intent in enacting the provision.

***Id.*** at 709-10 (citations, quotation marks, and brackets omitted); ***see also*** 1

Pa.C.S.A. § 1921(b)-(c).

J.E. argues that the physician-patient privilege applies to juvenile court

proceedings because they are civil in nature, not criminal. ***See*** Appellant's

Brief, at 6. J.E. asserts that juvenile proceedings fall under the ambit of 42

Pa.C.S.A. § 5929 because the juvenile court system is distinct from the

criminal court system and because this Court has previously stated that

"'Juvenile court proceedings are not criminal in nature but constitute merely

a civil inquiry or action looking to the treatment, reformation and rehabilitation

of the minor child[.]'" Appellant's Brief, at 6-10 (quoting ***In re J.B.***, 39 A.3d

421, 426 (Pa. Super. 2012) (quoting ***Commonwealth v. Henig***, 189 A.2d

894, 896 (Pa. Super. 1963) (*en banc*)). We disagree.

The physician-patient privilege is set forth in 42 Pa.C.S.A. § 5929.

**§ 5929. Physicians not to disclose information**

No physician shall be allowed, in any civil matter, to disclose any information which he acquired in attending the patient in a professional capacity, and which was necessary to enable him to act in that capacity, which shall tend to blacken the character of the patient, without consent of said patient, except in civil matters brought by such patient, for damages on account of personal injuries.

42 Pa.C.S.A. § 5929.

As the language of the statute makes clear, Pennsylvania courts have long recognized that "the physician patient privilege does not apply in criminal proceedings." **Commonwealth v. Grays**, 167 A.3d 793, 812 (Pa. Super. 2017) (citation omitted). To our knowledge, no Pennsylvania court has addressed whether juvenile adjudications are considered "civil matter[s]" under 42 Pa.C.S.A. § 5929.

Section 5929 makes no mention of juvenile proceedings and only mentions "civil matter[s]." "'[C]ivil actions' are those commenced and conducted in a court of record, involving traditional common law claims for damages or equitable relief governed by the Pennsylvania Rules of Civil Procedure." **East v. W.C.A.B.**, 828 A.2d 1016, 1022 (Pa. 2003) (footnotes omitted). We interpret "civil matter[s]" to more broadly apply to matters in civil cases that occur outside of court such as settlement negotiations and depositions.

Admittedly, "juvenile proceedings are not criminal proceedings." **In re S.A.S.**, 839 A.2d 1106, 1108 (Pa. Super. 2003) (citation omitted). However, it does not follow that because juvenile proceedings are not criminal proceedings that they are "civil matter[s]." **See East v. W.C.A.B.**, 828 A.2d

1016, 1023 (Pa. 2003) ("Although workers' compensation proceedings are admittedly non-criminal, that fact alone does not dictate that workers' compensation proceedings are therefore civil actions."). Juvenile delinquency proceedings are neither wholly criminal nor wholly civil.

Rather, with the passage of the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375, "[o]ur legislature has created a **separate** legal system for the adjudication of juvenile offenders." **Int. of J.C.**, 286 A.3d 288, 292 (Pa. Super. 2022) (citations omitted) (emphasis added). "The Juvenile Act [] grants jurisdiction to the juvenile court over proceedings in which a child is alleged to be delinquent or dependent." **Id.** (citations omitted). The Juvenile Act seeks to address the problems unique to court proceedings that involve minors.

> One of the stated goals of the Juvenile Act is to provide for the care, protection, and wholesome mental development of children. The purpose of juvenile proceedings is to seek treatment, reformation and rehabilitation, and not to punish. It cannot be ignored that one of the purposes of the Juvenile Act is to hold children accountable for their behavior. To this end, the juvenile court system was designed to **provide a distinctive procedure and setting** to deal with the problems of youth.

**In re J.B.**, 39 A.3d at 426-27 (footnote and citations omitted) (emphasis added).

Nothing in the Juvenile Act suggests that the legislature considered it to be a "civil matter." The Juvenile Act makes one mention of "civil matter[s]" where it is clearly distinguishing between civil, criminal, and juvenile court proceedings. **See** 42 Pa.C.S.A. § 6354(b). We find it hard to believe that the

legislature would pass an entire act governing juvenile court proceedings and include such proceedings in other statutes without specifically stating so.

Furthermore, the case relied upon by J.E. does not support his position that juvenile delinquency proceedings are "civil matter[s]." In **In re J.B.**, J.B., an eleven-year-old minor was charged with homicide and homicide of an unborn child. **See In re J.B.**, 39 A.3d at 425. The juvenile court excluded the public from the adjudication hearing and multiple media entities filed petitions to intervene and open court proceedings. **Id.** The juvenile court denied the petitions and this Court affirmed. **Id.** Before concluding that the presumption that all court proceedings are open to the public also applies to juvenile delinquency proceedings, the court stated "[t]his presumption extends to not only criminal and civil proceedings but also to juvenile dependency proceedings."[1] **Id.** (citations omitted). Thus, by distinguishing between criminal, civil, and juvenile dependency and delinquency proceedings, the court in **In re J.B.** recognized that juvenile delinquency proceedings are distinct from civil proceedings and thus, not "civil matter[s]."[2]

_____

[1] Although the presumption applies to juvenile delinquency proceedings, the court concluded that closure of the juvenile delinquency proceedings served a compelling government interest and that there was no less restrictive means to serve that interest, and thus, affirmed the juvenile court. **See In re J.B.**, 39 A.3d at 434.

[2] The passage that J.E. relies upon from **In re J.B.** that refers to juvenile proceedings as "civil inquiries" was used by the court to distinguish juvenile proceedings from criminal proceedings. **See In re J.B.**, 39 A.3d at 426. Further, the quote is from **Commonwealth v. Henig**, 189 A.2d 894 (Pa.
*(Footnote Continued Next Page)*

- 7 -

In sum, juvenile delinquency proceedings are not "civil matter[s]" as contemplated by 42 Pa.C.S.A. § 5929, and thus, the physician-patient privilege does not apply. Accordingly, J.E.'s argument is without merit and the juvenile court is affirmed.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/28/2025

---

Super. 1963) (*en banc*). The juvenile court system has changed dramatically since **Henig**. **Henig** predated a line of United States Supreme Court cases, most notably, **Application of Gault**, 387 U.S. 1 (1967), which extended certain procedural safeguards from criminal proceedings to juvenile proceedings and the passage of the Juvenile Act in 1976.