J-A03044-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: R.H., A MINOR            :      IN THE SUPERIOR COURT OF
                                               :          PENNSYLVANIA
                                               :
                                               :
APPEAL OF: R.H., A MINOR       :        No. 937 EDA 2014

Appeal from the Dispositional Order January 28, 2014
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0002253-2013

BEFORE:  GANTMAN, P.J., MUNDY J., and DUBOW, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED MAY 10, 2016**

Appellant, R.H., appeals from the dispositional order entered in the Philadelphia County Court of Common Pleas, following his adjudication of delinquency for indecent assault—complainant less than thirteen years of age, and indecent exposure.[1]  We affirm.

In its opinion, the juvenile court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issue for our review:

> DID NOT THE [JUVENILE] COURT ERR AND ABUSE ITS DISCRETION IN ADJUDICATING APPELLANT DELINQUENT, INSOFAR AS THE DECISION WAS BASED ON IMPROPER FACTORS, SPECIFICALLY THE CONDUCT OF THIRD PARTIES FOR WHOM APPELLANT COULD NOT BE HELD RESPONSIBLE, AND APPELLANT WAS COMPLYING WITH THE DIRECTIVES OF HIS PROBATION OFFICER AND THE COURT-ORDERED SUPERVISION PLAN?

---

[1] 18 Pa.C.S.A. §§ 3126(a)(7) and 3127(a), respectively.

(Appellant's Brief at 3).

Our review of a juvenile court's disposition implicates the following principles:

> Our standard of review of dispositional orders in juvenile proceedings is well settled. "The Juvenile Act grants broad discretion to the court when determining an appropriate disposition. We will not disturb a disposition absent a manifest abuse of discretion." *In re R.D.R.,* 876 A.2d 1009, 1013 (Pa.Super. 2005) (internal citation omitted). Moreover, "[a] petition alleging that a child is delinquent must be disposed of in accordance with the Juvenile Act. Dispositions which are not set forth in the Act are beyond the power of the juvenile court." *In re J.J.*, 848 A.2d 1014, 1016-17 (Pa.Super. 2004) (citation omitted).

*Commonwealth v. B.D.G.*, 959 A.2d 362, 366-67 (Pa.Super. 2008) (*en banc*). Further, the purpose of the Juvenile Act is as follows:

> Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.
>
> 42 Pa.C.S.A. § 6301(b)(2). This section evidences the Legislature's clear intent to protect the community while rehabilitating and reforming juvenile delinquents.

*In re L.A.*, 853 A.2d 388, 394 (Pa.Super. 2004) (some internal citations and quotation marks omitted). "The rehabilitative purpose of the Juvenile Act is attained though accountability and the development of personal qualities that will enable the juvenile offender to become a responsible and productive

- 2 -

member of the community." *In re R.D.R., supra* (quoting *In re B.T.C.*, 868 A.2d 1203, 1205 (Pa.Super. 2005)).

The Juvenile Act defines a delinquent child as "[a] child ten years of age or older whom the court has found to have committed a delinquent act and is in need of treatment." 42 Pa.C.S.A. § 6302. Indecent assault and indecent exposure constitute delinquent acts. *See id.* Section 6352(a) of the Juvenile Act sets forth the available dispositions for a delinquent child as follows:

**§ 6352. Disposition of delinquent child**

**(a) General rule.**—If the child is found to be a delinquent child the court may make any of the following orders of disposition determined to be consistent with the protection of the public interest and best suited to the child's treatment, supervision, rehabilitation and welfare, which disposition shall, as appropriate to the individual circumstances of the child's case, provide balanced attention to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable the child to become a responsible and productive member of the community:

* * *

(2) Placing the child on probation under supervision of the probation officer of the court or the court of another state as provided in section 6363 (relating to ordering foreign supervision), under conditions and limitations the court prescribes.

(3) Committing the child to an institution, youth development center, camp, or other facility for delinquent children operated under the direction or supervision of the court or other public authority and approved by the Department of Public Welfare.

> (4) If the child is 12 years of age or older, committing the child to an institution operated by the Department of Public Welfare.
>
> *    *    *
>
> In selecting from the alternatives set forth in this section, the court shall follow the general principle that the disposition imposed should provide the means through which the provisions of this chapter are executed and enforced consistent with section 6301(b) (relating to purposes) and when confinement is necessary, the court shall impose the minimum amount of confinement that is consistent with the protection of the public and the rehabilitation needs of the child.

42 Pa.C.S.A. § 6352(a)(2)-(4). Furthermore, this Court has held that the purpose of juvenile proceedings is not to punish the juvenile offender, but to seek treatment, reformation, and rehabilitation. *See In re R.D.R., supra* at 1016 (citations and quotation marks omitted); *In re J.B.*, 39 A.3d 421, 427 (Pa.Super. 2012) (citation omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Robert J. Rebstock, we conclude Appellant's issue merits no relief. The juvenile court's opinion comprehensively discusses and properly disposes of the question presented. (*See* Juvenile Court Opinion, filed April 24, 2015, at 14-15) (finding: court initially placed Appellant on interim probation, ordered treatment for Appellant's sex behavior problems, and prohibited any unsupervised contact with minors; at January 28, 2014 hearing, Commonwealth requested adjudication of delinquency because Appellant

was suspended from school for fighting and needed continued treatment; at hearing, court questioned Appellant's mother and probation officer and discovered that Appellant's twenty-four-year-old aunt was supervising him; Appellant was not being properly supervised by adult at all times, including time headed to, during, and returning from school every day; Appellant had been permitted to violate court's initial dispositional order, and Appellant needed further treatment and intensive supervision to ensure he had no unsupervised contact with minors; Appellant's mother was unable to provide him with required intensive supervision; intensive treatment services for Appellant's sex behavior problems were necessary for Appellant's care and rehabilitation, and protection of public).  The record supports the court's decision; therefore, we have no reason to disturb it.  Accordingly, we affirm on the basis of the juvenile court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/2016

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY RECEIVED

FAMILY DIVISION, JUVENILE BRANCH 2015 APR 24 PM 1:31

PROPROTHY

IN THE INTEREST : PETITION NUMBER

OF R.H. : CP-51-JV-0002253-2013

## OPINION OF THE COURT

In this juvenile proceeding, the defendant, R.H., was charged in a petition with Rape, (F-1), Involuntary Deviate Sexual Intercourse (F-1), Sexual Assault (F-2), Indecent Assault (M-1) and Indecent Exposure (M-1). As the defendant was a juvenile at the time of his arrests in Philadelphia County, his initials are being used for purposes of confidentiality.

The grounds for the Defendant's appeal, as set forth in his Supplemental Statement of Errors Complained of on Appeal filed on February 25, 2015, pursuant to Rule 1925 (b) of the Pennsylvania Rules of Appellate Procedure, are as follows:

A) The trial court erred in admitting into evidence the out-of-court statement of the complaining witness (J.R.) and denying the appellant's motion to bar said statements. The statements did not meet the requirements of the Tender Years statute regarding reliability or unavailability as defined by the statute. Furthermore, the admission of those out-of-court statements violated appellant's constitutional right to confront the witnesses against him.

B) The trial court erred in adjudicating appellant delinquent, insofar as appellant, while on interim probation, did comply with the court-ordered safety plan, as approved by the appellant's probation officer, and was complying with all of the requirements of probation. Appellant was in substantial compliance with the conditions of interim probation insofar as he was able to comply, and it was an abuse of discretion to effectively punish appellant for complying with the court-

1

ordered safety plan simply because the court later became dissatisfied with the plan.

**PROCEDURAL HISTORY**

On June 11, 2013, the Defendant was arrested by the Philadelphia Police Department on charges of Rape, (F-1), Involuntary Deviate Sexual Intercourse (F-1), Sexual Assault (F-2), Indecent Assault (M-1) and Indecent Exposure (M-1).

In Delinquency Petition, # CP-51-JV-0002253-2013, filed on June 11, 2013, the Commonwealth alleged that:

> On or about May 2, 2013, at or near 666 North 12th Street, the Defendant, without consent, by forcible compulsion, or by threat of same, penetrated the genitals or anus of the complainant, J.R., age 5.

On June 11, 2013, at the Detention Hearing, the Defendant was discharged from the Juvenile Justice Service Center to the custody of his mother. In-Home Detention (IHD) was ordered with permission to attend school and lawyer appointments. The Defender Association of Philadelphia was appointed to represent the Defendant and the Master ordered that discovery be provided by June 27, 2013. A Stay Away Order was also entered. The matter was continued until July 11, 2013.

On July 11, 2013, the Defendant's attorney requested a continuance for further investigation. The Defendant remained subject to In-Home Detention with house restriction. The matter was continued until August 8, 2013.

On August 2, 2013, the District Attorney's Office filed a Motion for Protracted/Semi-Protracted Adjudicatory Hearing.

On August 8, 2013, the Defendant was discharged from In-Home Detention and placed on GPS monitoring with house restrictions because it was alleged the Defendant was involved in an altercation on August 4, 2013 at 1:30 A.M. and a Private Criminal

2

Complaint was filed. The Stay Away Order was continued and the matter was listed for an adjudicatory hearing on August 28, 2013.

On August 26, 2013, the District Attorney's Office filed a Notice of Intent to Proceed by way of the "Tender Years" Exception to the Hearsay Rule.

On August 28, 2013, the Court granted the District Attorney's Office Oral Motion to amend charges to Rape-Forcible Compulsion, 18 Pa.C.S. § 3121 (F-1). The Court also found that the complaining witness, a four (4) old child, was not competent to testify. The Defendant remained on GPS monitoring with house restrictions and the matter was continued for an adjudicatory hearing on October 3, 2103, to allow the Defendant's attorney to respond to the Notice of Intent to Proceed by way of the "Tender Years" Exception to the Hearsay Rule.

On September 9, 2013, the Defendant's attorney filed a Motion in Opposition of J.R.'s Out-Of-Court Statements under the Tender Years Exception to the Hearsay Rule, 18 PA.C.S. § 5958.1.

On October 3, 2013, the Court granted the District Attorney's request to proceed by way of the "Tender Years" exception to the hearsay rule. After a hearing on all of the evidence, the Court found that the Defendant committed the delinquent acts of Indecent Assault (M-1) and Indecent Exposure (M-1). The Court found the Defendant not guilty of all of the remaining charges. The Defendant was placed on Interim Probation under the supervision of the Philadelphia Juvenile Probation Department, ordered to undergo random drug screens and complete twenty (20) hours of community service. The Court also ordered a Behavioral Health Evaluation – Psychosexual Assessment and referred the Defendant to the Joseph J. Peters Institute. The Defendant remained on GPS monitoring

3

with house restrictions. In addition, the Court ordered that the Defendant was to have "no unsupervised contact with minor children".

On January 28, 2014, the Court adjudicated the Defendant delinquent because: the Defendant committed delinquent acts of Indecent Assault and Indecent Exposure; had violated the Court's initial dispositional order by having contact with minors; and he was in need of further treatment and intensive supervision to ensure that there was no unsupervised contact with minors. The Court also continued the Defendant's probation and ordered the Defendant to attend Joseph J. Peters Institute. Additionally, the Court ordered DNA testing and payment of court costs in the amount of $48.50.

On February 6, 2014, the Defendant's attorney filed a Motion to Reconsider Adjudication of Delinquency.

On March 18, 2014, the Court denied the Defendant's Motion to Reconsider Adjudication of Delinquency because the Defendant committed delinquent acts of Indecent Assault and Indecent Exposure and he was in need of treatment and supervision.

On March 31, 2014, the Court entered an Order directing Defendant to file a Statement of Errors Complained of on Appeal pursuant to Pa. R.A.P. 1925(b) within twenty one (21) days.

On April 14, 2014, the Defendant's attorney filed a Request for Extension of Time to File a Supplemental Statement of Errors upon Receipt of All Notes of Testimony.

On April 21, 2014, the Defendant's attorney filed an initial Statement of Error Complained of on Appeal.

4

On April 28, 2014, the Court entered an Order permitting Defendant's attorney additional time to file a Statement of Errors Complained of on Appeal upon receipt of all Notes of Testimony.

On October 22, 2014, the Court provided Defendant's counsel the Notes of Testimony from the October 3, 2013, adjudicatory hearing.

On February 11, 2015, the Court provided Defendant's counsel the Notes of Testimony from the January 28, 2014, dispositional hearing.

On February 18, 2015, the Court was advised via email from the Court Reporter Melissa Belmont that the Notes of Testimony from the August 28, 2013, adjudicatory hearing could not be transcribed due to a malfunction with her computer. This information was then provided to the Defendant's counsel.

On February 26, 2015, the Defendant's counsel filed a Supplemental Statement of Errors Complained of on Appeal. The Defendant's Supplemental Statement of Errors Complained of on Appeal raised two issues in this appeal and advised that he would file, pursuant Pa. R.A.P, 1923, a Statement in Absence of Transcript for the Events of August 28, 2013.

On February 27, 2015, the Defendant's counsel filed a Statement in Absence of Transcript for the Events of August 28, 2013.

On or about March 13, 2015, the Commonwealth filed a Response to Defendant's Proposed Statement in Absence of Transcript.

At the April 7, 2015, Review Hearing, the Court heard from the Defendant's Probation Office and received the March 31, 2015, report of Ketsia Paul, M.S.Ed. After reviewing the report that the Defendant had been successfully discharged from Joseph J.

5

Peters Institute Outpatient Sex Offense Treatment Program and hearing the recommendations of the Joseph J. Peters Institute and Probation Department, the Court discharged the petition. The Court also received a set of stipulated facts from appellate counsel regarding the Statement in Absence of Transcript.

With the filing of its Opinion, the Court also filed the Court's Statement in Absence of Transcript Pursuant to Rule 1923 of the Pennsylvania Rules of Appellate Procedure.

## FACTS

At the October 3, 2013, adjudicatory hearing before this Court, two (2) witnesses testified. (N/T 10-3-2013, page 3.)

The first witness, D.R, is the older sister of the victim in this case. (N/T 10-3-2013, page 4.) D.R. testified that on May 2, 2013, at 5:00 P.M. five (5) children were playing a video game in her living at 666 North 12th Street in Philadelphia. (N/T 10-3-2013, pages 5-7.) Among them was Defendant, R.H., one of their neighbors, whom the witness identified in court. (N/T 10-3-2013, pages 6, 9.) D.R. stated that right after the Defendant, left the house in the middle of the game, they were playing, her brother started to cry. (N/T 10-3-2013, pages 8 - 14.) D.R. testified that she asked her brother was wrong and he said that the Defendant, R.H., made the victim touch his private parts. (N/T 10-3-2013, page 11.) D.R. indicated that that her brother gave her this information about ten (10) minutes after the Defendant left while they were still in the living room. (N/T 10-3-2013, page 11.) D.R. added that her step-cousin, T.R. was with them at the time of the victim's statement. (N/T 10-3-2013, page 11.) D.R. testified that she then took her brother upstairs to his room and asked him if that was everything. (N/T 10-3-2013, page

6

11.) D.R. added that her brother asked if she would tell on him and D.R. said, "I was like no. It's not your fault if you did anything". (N/T 10-3-2013, page 11.) D.R. then indicated that she asked her brother again what was wrong and he said that the Defendant "made me put my mouth on his private part". (N/T 10-3-2013, pages 11-12.) D.R. immediately called her step-mother who was at a doctor's appointment. (N/T 10-3-2013, page 13.) Her step-mother returned in five (5) minutes. (N/T 10-3-2013, page 20.)

D.R. also testified that her brother said that it happened when he went upstairs to get R.H. to continue the game. (N/T 10-3-2013, page 12.) D.R. stated that she then went upstairs into the hallway and her brother wasn't there. (N/T 10-3-2013, page 12.) D.R. said she saw the Defendant coming down the stairs. (N/T 10-3-2013, page 12.) D.R. called for her brother to come down to the first level of the home. (N/T 10-3-2013, page 12.) D.R. added that no one else was upstairs at the time. (N/T 10-3-2013, pages 23-24.) D.R. said that her brother kept putting his head down and, before the Defendant left the house; the victim told R.H. they were no longer friends. (N/T 10-3-2013, page 13.) D.R. testified that the victim told his mother what happened when she got home. (N/T 10-3-2013, page 14.) D.R. also added that since this incident occurred, her brother has been angry. (N/T 10-3-2013, page 14.)

The second witness was L.W., the victim's mother. She testified that she returned home to 666 North 12th Street, Philadelphia a little before 5:00 P.M. She said that upon her return, the victim and her step-daughter, D.R. jumped into her truck and began to tell her what happened. (N/T 10-3-2013, page 25.) L.W. testified that her son told her that the Defendant made him touch his penis and put it in his mouth and that he brushed his teeth afterwards. (N/T 10-3-2013, page 25.) L.W. noted that her son was in tears, very shaken

7

and scared. (N/T 10-3-2013, page 26.) Following this disclosure, L.W. said that her son would not go out for the next several months. (N/T 10-3-2013, page 26.) L.W. also testified her son made her close the blinds for the rest of the day of the incident. (N/T 10-3-2013, page 26.) Her son also told her he did not want any adult males in the house. (N/T 10-3-2013, page 26.) When men came to check on her son, L.W. indicated he would stay very close or behind her. (N/T 10-3-2013, page 27.) Her son also told her that he was afraid of grown men. (N/T 10-3-2013, page 28.) L.W. explained that her son was "shaken to pieces" when they first came to court even though he was surrounded by family. (N/T 10-3-2013, page 28.) L.W. also noted that her son sobbed when he was told what would happen in the court room and that he shook and wrapped his arms around her when he came out. (N/T 10-3-2013, page 29.) L.W. testified that her son would not leave her side for the next two (2) days. (N/T 10-3-2013, page 29.) L.W. noted that her son is now very cautious when he goes outside and he is receiving treatment to help him talk about his experience and not to suppress it. (N/T 10-3-2013, page 30.) L.W. explained that she tries to get her son to talk about it and to realize that he might see the Defendant when he goes outside or to court. (N/T 10-3-2013, page 30.) L.W. also stated her son is not forthcoming in his responses but he will eventually answer her questions regarding the incident. (N/T 10-3-2013, pages 30-31.) L.W. added that he son never had any arguments with the Defendant before nor did he ever accuse anyone else of harming him. (N/T 10-3-2013, page 31.) However, since the incident, her son has been very argumentative and physically mean. She also testified that her son yells and fights more than he did prior to the incident. (N/T 10-3-2013, pages 31-32.)

On cross examination, L.W. admitted that she did not call the police on the date of the incident. (N/T 10-3-2013, page 33.) She went to the police on the following day and told the police what her son told her. (N/T 10-3-2013, page 33.) She also took her son to the Philadelphia Children's Alliance, but did not participate in her son's interview. (N/T 10-3-2013, page 34.) Additionally, she stated that over the course of the time in therapy, her son has been able to talk about the incident with a therapist. (N/T 10-3-2013, page 35.)

By stipulation of counsel, the video of the victim's May 13, 2013, interview with the Philadelphia Children's Alliance case worker was played for the Court on October 3, 2103.

## LEGAL ARGUMENT

### I. TENDER YEARS HEARSAY ACT (TYHA) AND CONFRONTATION CLAUSE CHALLENGE

Hearsay is generally inadmissible unless it falls within an exception to the hearsay rule. *Commonwealth v. Bryson*, 860 A.2d 1101, 1103 (Pa. Super. 2004), appeal denied, 583 Pa. 658, 875 A.2d 1072 (2005) (en banc). One such exception is found in section 42 Pa.C.S.A. § 5985.1. Under the TYHA, certain out-of-court statements made by a child victim or witness may be admissible at trial if the child either testifies at the proceeding or is unavailable as a witness, and the court finds "that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability." 42 Pa.C.S.A. § 5985.1(a)(1).

**42 Pa.C.S.A. § 5985.1 - Admissibility of certain statements.**

**(a) General rule.**-- An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12 years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. ... 31 (relating to sexual

9

offenses), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

> (1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

> (2) the child either:
>     (i) testifies at the proceeding; or
>     (ii) is unavailable as a witness.

**(a.1) Emotional distress.**--In order to make a finding under subsection (a)(2)(ii) that the child is unavailable as a witness, the court must determine, based on evidence presented to it, that testimony by the child as a witness will result in the child suffering serious emotional distress that would substantially impair the child's ability to reasonably communicate. In making this determination, the court may do all of the following:

> (1) Observe and question the child, either inside or outside the courtroom.
> (2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child in a medical or therapeutic setting.

**(a.2) Counsel and confrontation.**--If the court hears testimony in connection with making a finding under subsection (a)(2)(ii), all of the following apply:

> (1) Except as provided in paragraph (2), the defendant, the attorney for the defendant and the attorney for the Commonwealth or, in the case of a civil proceeding, the attorney for the plaintiff has the right to be present.

> (2) If the court observes or questions the child, the court shall not permit the defendant to be present.

**(b) Notice required.**--A statement otherwise admissible under subsection (a) shall not be received into evidence unless the proponent of the statement notifies the adverse party of the proponent's intention to offer the statement and the particulars of the statement sufficiently in advance of the proceeding at which the proponent intends to offer the statement into evidence to provide the adverse party with a fair opportunity to prepare to meet the statement.

Where a child under the age of 14 is called to testify as a witness, this Court must make an independent determination of competency, which requires a finding that the witness possess (1) a capacity to communicate, including both an ability to understand

questions and to frame and express intelligent answers; (2) the mental capacity to observe the actual occurrence and the capacity of remembering what it is that he or she is called to testify about; and (3) a consciousness of the duty to speak the truth. ***Commonwealth v. Washington***, 722 A.2d 643, 646 (Pa. 1998) (citing ***Rosche v. McCoy***, 156 A.2d 307, 310 (Pa. 1959)).

Under Pa.R.E. 601(b), a person may be deemed incompetent to testify if the Court determines that, because of a mental condition or immaturity, the person: (1) is, or was, at any relevant time, incapable of perceiving accurately; (2) is unable to express himself or herself so as to be understood either directly or through an interpreter; (3) has an impaired memory; or (4) *does not sufficiently understand the duty to tell the truth*. Pa.R.E. 601(b).[1] In the case of ***Commonwealth v Walter***, 93 A.3rd 442 (Pa.) 2014, our Supreme Court held that a child need not be deemed competent to testify as a witness in order for the trial court to admit the child's out-of-court statements into evidence pursuant to the TYHA.

Under the TYHA, an out-of-court statement of a child sexual assault victim or witness who is twelve years old or younger, is admissible into evidence in a criminal or civil proceeding if two requirements are satisfied. First, the trial court must find that the evidence is relevant and that the time, content, and circumstances of the statement provide sufficient indicia of reliability. Second, the child must either (1) testify at the proceeding, or (2) be deemed unavailable as a witness. 42 Pa.C.S.A. § 5985.1(a)(2)(i), (ii). ***Commonwealth v Walter*** *(supra.)*

---

[1] On August 28, 2013, the Court found that the victim was 4 years old and not competent to testify due to his age and his inability to understand the duty to tell the truth.

11

The Tender Years Hearsay Act allows the Court to determine whether the statements given by the victim, J.R, to his older sister, D.R., and to his mother, L.W., made on May 2, 2013, and to Philadelphia Children's Alliance (PCA) interviewer, Michelle King, are admissible. The Commonwealth provided the police reports and statements of D.R. and L. W. and the video of the PCA interview to Defendant's attorney.

In the present case, the court heard testimony from D.R., the victim's step-sister, and L.W., the victim's mother regarding her son's behavior and demeanor following the incident underlying in this matter. D.R. stated that the victim started crying almost immediately after the Defendant left their home. When L.W. came home, she noted that her son had tears in his eyes, was scared and also very shaken. L.W. also testified her son made her close the blinds for the rest of the day of the incident and he did not want any male figures in the house. L.W. noted that her son's behavior noticeably changed since the incident.

This Court considered the time, content, and circumstances of the victim's statement, the first prong of the TYHA test, prior to deciding that the hearsay statements provided sufficient indicia of reliability to the Court so as to be admissible under the TYHA. *__Commonwealth v Walter__ (supra.)* With regard to the second prong of the TYHA test, this Court found the testimony of D.R. and L.W. presented compelling difficulties experienced by the victim following the incident. These difficulties included, but were not limited to, the victims' crying, the victim's visible distress, and the changes in the victim's behavior and demeanor. *__Commonwealth v Walter__ (supra.)* Since the Court ruled

12

the victim was not competent to testify, he was "unavailable" to testify as a witness under the TYHA.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const., Amendment. VI. This constitutional protection is known as the Confrontation Clause. The same protection is also expressly contained in Article 1, Section 9, of the Pennsylvania Constitution. In landmark case of ***Crawford v. Washington***, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court rejected the "indicia of reliability" test previously approved in ***Ohio v. Roberts***, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), as a violative of the principles of the Confrontation Clause, and held:

> Where non-testimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law-as does *Roberts,* and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination.

***Crawford***, 541 U.S. at 68, 124 S.Ct. 1354.

Whether a statement is testimonial for purposes of Confrontation Clause analysis depends on its primary purpose. A statement is testimonial for Confrontation Clause purposes if made for the purpose of establishing or proving some fact in a criminal proceeding. Out-of-court statements that qualify as testimonial are not admissible under the Confrontation Clause unless the witness is unavailable and the defendant had a prior opportunity to cross examine the witness.

13

In _**Com. v. Allshouse**_, 36 A.3d 163 (Pa.), 2012, a four-year-old's statement to county children and youth services caseworker that her father had caused her infant brother's injury was deemed non-testimonial, and its admission did not violate defendant's rights under the Confrontation Clause; statements and actions of caseworker and four-year-old supported determination that the primary purpose of interview was to allow caseworker to assess and address what they believed to be an emergency, not to obtain testimony about a past event for use in a criminal proceeding, and the circumstances surrounding the interview lacked formality.

In the present case, relying on the Pennsylvania Supreme Court's decisions in _**Com. v Allhouse**_, (surpa.) and _**In Re N.C.**_ 105 A.3d 1199 (Pa.) 2014, this Court found that the victim's out of court statements to D.R., L.W. and the Philadelphia Children's Alliance case worker were 'non-testimonial' in nature and their admission did not violate the Defendant's rights under the Confrontation Clause of the Sixth Amendment of the US Constitution or Article 1, Section 9, of the Pennsylvania Constitution. Therefore, the out of court hearsay statements of the victim given to D.R., L.W. and the Philadelphia Children's Alliance interviewer, Michelle King, were properly admitted.

## II. ADJUDICATION OF DELINQUENCY

Under the Juvenile Act, a juvenile proceeding is commenced, by the filing of a petition alleging that the juvenile has committed delinquent acts. _See_ 42 Pa.C.S.A. § 6321(a)(3). Once a petition has been filed, the juvenile court conducts a hearing at which evidence on the delinquency petition is heard. In the present case, after finding that the Defendant committed delinquent acts of Indecent Assault and Indecent Exposure as charged in the Juvenile Petition, this Court initially placed the Defendant on interim

probation and ordered treatment for Defendant's problems with sexual behavior along with prohibiting any *unsupervised contact* with minor children.

On January 28, 2014, the Commonwealth requested an adjudication of delinquency because the Defendant was suspended for being involved in a fight at school which demonstrated his need for continued treatment. At this time, the Court was made aware that the Defendant was being supervised by his aunt, his mother's 24 year old sister. After further questioning of the Probation Officer and Defendant's mother, the Court found out that the Defendant was not being properly supervised by an adult at all times including, but not limited to, at school and traveling to and from school on a daily basis. Pursuant 42 Pa.C.S.A. § 6341(b), this Court found the Defendant had been permitted to violate its initial dispositional order and he was in need of further treatment and intensive supervision to ensure that there was no unsupervised contact with minors. The Court entered an order adjudicating the juvenile delinquent finding that the Defendant needed more intensive supervision than his mother was willing or able to provide for him. In order to protect the public and to provide the Defendant with needed programs of supervision, care and rehabilitation, the Defendant was referred to J.J. Peters Institute (JJPI), a non-profit mental health agency, to provide intensive treatment services for individuals, such as the Defendant, that have sexual behavior problems.

## CONCLUSION

This Court believes that the Defendant's request for relief on appeal should be denied.

BY THE COURT

_____

ROBERT J. REBSTOCK, J

April 24, 2015

15